■ JANE SCHOONMAKER, Appellant, v. STATE OF NEW YORK, Respondent. (Claim No. 42170.) — STALEY, JR., J. Appeal from a judgment in favor of defendant, entered March 1, 1967, upon a decision of the Court of Claims. About 12:05 A.M. on January 1, 1962 claimant was struck by an automobile driven by Charles Cornick, and, as a result of the accident, she sustained severe permanent injuries. The accident occurred on the southerly side of Route 86 in the Town of Wilmington about 150 to 200 yards west of the Sportsman's Inn. Claimant testified that a few minutes before the accident, she and her companion Erl Koenig left the Inn to persuade George Bovee to return to the Inn. Bovee' car was parked on a lawn used as a temporary parking area about 150 to 200 yards west of the Inn. As they approached the parking area Bovee was moving his car toward the road and Koenig called him, whereupon Bovee stopped his car with the front wheels on the pavement of the road. Claimant and Koenig then proceeded to the driver's side of Bovee's car, and Koenig began talking to him. Koenig was standing on the shoulder of the road next to the driver's door, and claimant was behind him towards the rear fender of the Bovee car. Neither claimant nor Koenig had any recollection of hearing or seeing the Cornick car or its lights prior to being struck by the Cornick car. Cornick testified that, as he approached the Sportsman's Inn, he came over a hill and observed a car 400 to 500 feet away with its high beam lights on. He did not realize that Bovee's car was in the eastbound lane standing still. The lights were angled across the road and had a tendency to blind him. He flicked his lights up and down because the lights of the other car blinded him. He could not see well enough and, as he approached the car, its lights blinded him more. He pulled to the left and, as the cars on the left were blocking the road, he pulled back to the right. As he passed the lights of the Bovee car he saw claimant and Koenig for the first time, and could not avoid hitting them. He then continued on and struck the left rear fender of the Bovee car, and then struck a car parked on the southerly shoulder of the road. Mrs. Cornick testified that the lights attracted her; that they were not in the middle of the road but "at an angle where you couldn't see nothing", and that the lights blinded us. In Cornick's statement to the police, he made no mention of his turn to the left, or of cars blocking the road on the left, and one eyewitness testified that the Cornick car did not turn to the left. This claim is based upon claimant's contention that the State, after knowledge of a dangerous condition caused by the parking of automobiles on both sides of the road in the area of the accident, failed to erect "No Parking" signs, and that the State was further negligent in that it permitted automobiles to be parked partially on the shoulders and partially on the pavement of Route 86 and, that on the night of the accident, the roadway was so narrowed by parked vehicles there was no room for Cornick to pass the Bovee car. Considerable evidence was introduced with regard to the parking problem in the area of the Sportsman's Inn including evidence of an investigation by the agencies responsible, and the determination by the State Traffic Commission not to authorize the erection of "No Parking" signs based upon the absence of any history of accidents in the area and the agreement of the owner of the Sportsman's Inn to increase the size of the parking facilities for the Inn and the further fact that the problem occurred only on some weekends during the skiing season. The evidence is conflicting as to whether cars were parked on both shoulders of the road in the area of the accident, and also as to whether Cornick was traveling in the middle of the road as he testified or had driven about 200 feet on the south shoulder to avoid a head-on collision with Bovee as stated in the police accident report

received in evidence. The road or highway in the area of the Sportsman's Inn consists of a blacktop pavement 20 feet wide with earth shoulders on each side five feet wide except in an area where guard rails were erected and in this area the shoulders were four feet wide. The accident, however, did not occur in the area of the guard rails, but occurred some distance west thereof. The Court of Claims determined that there were cars parked on the north shoulder of the highway in the accident area and that they extended into the highway at most two feet; that there were no vehicles parked on the south shoulder of the highway west of the accident site; that the front wheels of the Bovee vehicle were on the paved portion of the road; that there was at least 12 feet of passable highway area between Bovee and the cars on the north side of the road rather than two or three feet as asserted by Cornick; that the Bovee vehicle was headed in a westerly direction at an angle of 20 to 25 degrees with lights on high beam; that the combination of the lights and the position of the Bovee vehicle confused Cornick, who assumed that Bovee was traveling west and that Cornick attempted to pass Bovee by pulling to his right, striking and injuring the claimant and her companion. Upon this determination the court concluded "that no act or omission on the part of the State of New York was a proximate cause of the claimant's injuries", and dismissed the claim. Determinations of questions of fact and credibility of witnesses are within the province of the Court of Claims as the trier of the facts and, although this court has the power to disagree with the trial court's evaluation of the testimony and reverse, we should not do so unless we are convinced that the trial court's findings are incorrect and contrary to the weight of the evidence. (*Harrow v. State of New York,* 21 A D 2d 571, affd. 17 N Y 2d 619.) The judgment of the Court of Claims in its appraisal of the credibility of the witnesses and its determination of the factual issues should not be disturbed. Claimant would have us find that the State was negligent in that the road was impassable but, by her own testimony, Bovee's vehicle was only two feet on the pavement of the road and thus even with cars parked on the north shoulder, there would have been according to her testimony, 16 feet of passable highway. The course of travel of the Cornick vehicle after it struck claimant also supports the court's conclusion that Cornick was blinded and confused by the lights and position of the Bovee vehicle and attempted to pass Bovee on the right. The determination of the State Traffic Commission that "No Parking" signs were not required in the area near Sportsman's Inn where the accident happened cannot be held to be negligence, under the circumstances of this case. "In the area of highway safety, at least, it has long been the settled view, and an eminently justifiable one, that courts should not be permitted to review determinations of governmental planning bodies under the guise of allowing them to be challenged in negligence suits; something more than a mere choice between conflicting opinions of experts is required before the State or one of its subdivisions may be charged with a failure to discharge its duty to plan highways for the safety of the traveling public. No such evidence was offered here." (*Weiss* v. *Fote,* 7 N Y 2d 579, 588.) Judgment affirmed, without costs. Gibson, P. J., Staley, Jr., Cooke and Greenblott, JJ., concur in memorandum by Staley, Jr., J.; Aulisi, J., not voting.