■ MICHAEL BARNARD, an Infant, by His Father, RALPH M. BARNARD, Appellant, v STATE OF NEW YORK, Respondent. (Claim No. 54278.)—Appeal from a judgment, entered October 10, 1973, upon a decision of the Court of Claims which dismissed claimant's claim against the State. Claimant, Mich-

ael Barnard, a partially sighted young man, 21 years of age, was riding as a rear seat passenger in an automobile owned and operated by one Robert Cappel in a southerly direction along New York State Route 10 in the Town of Jefferson, County of Schoharie, at about 11:15 P.M. on February 21, 1971, when said vehicle failed to negotiate a curve to the right and continued straight into County Road 13, which intersected with Route 10 at the point where Route 10 curved to the right or westerly, and into the path of another automobile proceeding northerly along Route 10 and approaching the intersection of Route 13. A head-on collision occurred and Robert Cappel was killed, as was his front seat passenger, Dave De Maria, and claimant sustained serious injuries. Both vehicles were being operated within the speed limit, neither driver had ingested any alcohol or drugs, the night was clear, the road surfaces dry and Route 10 was marked by a double yellow centerline. Snowbanks, three to five feet in height, along both sides of Route 10, obscured the guardrails. It is the sole contention of claimant that the State was negligent in the maintenance and signing of New York State Route 10 in that it erected inadequate, confusing and misleading signs northerly of the subject intersection' that tended and, in this case, did deceive the operator of the southbound vehicle to the degree that he was entrapped into thinking that Route 10 continued straight and did not curve westerly. Claimant's expert testified that while the speed sign, 740 feet northerly of the intersection, and the sign indicating that Route 10 curved to the right, located 540 feet northerly of the intersection, were both standard in size and designed in accordance with the Manual of Uniform Traffic Control Devices of the State of New York, they were inadequate, given the topography in the area of the intersection, to instruct southbound drivers that a potentially dangerous intersection lay ahead and that such operators should be prepared to make a marked change in direction to their right. The State's experts testified to the contrary. Citing *Williams v State of New York* (34 AD2d 607) and *Swartz v State of New York* (4 AD2d 983) the court found "that the curve and intersection warning signs, the stated speed sign, the pavement markings and the surface grading of the highway should have provided adequate warning of whatever hazard was presented by the curve and intersection" and, accordingly, dismissed the claim. We concur for the reasons given by the Court of Claims. (Cf. *Weiss v Fote,* 7 NY2d 579, 588; *Stuart-Bullock v State of New York,* 38 AD2d 626, affd 33 NY2d 418; *Schoonmaker v State of New York,* 32 AD2d 1005.) Herein, the State acted judiciously in signing New York State Route 10 and there is nothing in the record probatively showing that the use of the subject route over an extended period of time by the driving public gave rise to such a number of accidents that would characterize the signing plan as being inadequate. The two prior accidents relied upon by claimant are not only numerically insufficient, the road then having been in use for 43 years, they did not occur because of the reasons assigned by claimant for the happening of this accident. Judgment affirmed, without costs. Mahoney, Main, Herlihy and Reynolds, JJ., concur; Greenblott, J. P., dissents and votes to reverse in the following memorandum: Greenblott, J. P. (dissenting). I respectfully dissent. The majority appears to misconceive the undisputed facts, thereby failing to appreciate the significance of claimant's contentions, and to rely on case authority which, in my opinion, is inapposite. While the majority has correctly described the configuration of the roads intersecting at the point of the accident, it makes no mention of the sign which claimant contends was misleading in such a manner as to contribute substantially to the unfortunate accident. The majority refers to a speed sign 740 feet north

of the intersection, and a sign 200 feet further south indicating that Route 10 curved to the right. In actual fact, as both parties agree, both of these signs were located at the 740-foot point, and if there had been no other signs, this claim would be baseless. However, at the point 200 feet closer to the intersection there was, as both parties again agree, a sign indicating that the main road (Route 10) continued straight, with another road intersecting on the left. There was no such road on the left, and Route 10 did not continue straight. The State's expert candidly admitted that the sign did not accurately depict the configuration of the intersection, and the claimant's expert was of the view that the signing of Route 10 did not conform to good engineering practice. It is thus readily understandable that a driver unfamiliar with the road, having last seen a sign indicating a main road going straight with another road to the left, and then arriving at an intersection where the main road curved to the right and the only other road continued straight, would experience some confusion as to the desired route and find himself for a brief instant in the wrong lane of traffic in an attempt to make a correction. Here, that instant was a fatal one. On such facts, the finding of the Court of Claims that the signs, *inter alia,* provided adequate warning of whatever hazard was presented by the curve and intersection is patently unreasonable. In support of this finding, the Court of Claims and the majority in this court rely on *Swartz v State of New York* (4 AD2d 983) and *Williams v State of New York* (34 AD2d 607). Neither case is pertinent. A reading of the memorandum of decision in *Swartz* makes it clear that the sign involved there accurately described the curves in the roadway about which the claimants complained. There was no contention that the sign was affirmatively misleading by describing something that simply was not there. In *Williams,* there was no sign at all, and for this reason negligence was alleged. (In addition, the claimant-driver had pleaded guilty to speeding.) We need not deal in this case with the circumstances in which the State must respond in damages for its failure to establish any traffic-control device. That is the concern of *Weiss v Fote* (7 NY2d 579) and its progeny, improperly relied on here by the majority. Here, the State is not sought to be charged for an alleged error of judgment; the error is clearly one of carelessness in posting an obviously incorrect and misleading sign which, according to the uncontradicted testimony, clearly contributed to the hazard and the happening of the accident. If case authority is to control the result in this action, the outcome is clearly dictated by *Hulett v State of New York* (4 AD2d 806). There, as here, the claimants were passengers in a vehicle traveling a State highway which curved to the east (left) while a village street running north-south cut into the highway at the curve. A sign indicated, however, that the State road continued straight, with another road intersecting from the right. (Another sign further away from the intersection which indicated the correct configuration was partially obstructed.) After a dismissal of all claims in the Court of Claims, this court found that, notwithstanding the negligence of the driver (he had been drinking), the State was obviously negligent in two respects, one of which was in erecting a sign which gave the erroneous impression that the main road continued straight ahead. This act of negligence, we found, was one of the proximate causes of the accident because it "greatly increased the probability of the occurrence of an accident" (4 AD2d 806, 807). The passengers were thus held entitled to recover against the State. In the case at bar, the claimants were equally guiltless. I fail to see any reason for a different result. I, therefore, vote to reverse and remand the matter to the Court of Claims for an assessment of damages.