Fuld, J.
In the early evening of October 31, 1955, a collision occurred in Buffalo between an automobile owned and operated by Willie Alexander and an automobile operated by Francis Fote and owned by him and his wife. Alexander was proceeding south on Delaware Avenue and Fote was driving west on Delavan Avenue. The impact of the collision propelled Fote’s car across the intersection, where it jumped the curb on the southwest corner and crushed Pauline Weiss, who had just alighted from a bus on her way home from work, against a fire hydrant. *583 Mrs. Weiss sustained serious injuries and instituted an action, naming Alexander, the Fotes and the City of Buffalo as defendants. Alexander’s car was damaged and he too brought suit against the city and Francis Fote.
At the trial, the plaintiffs sought to show that the traffic signal lights maintained by the City of Buffalo at the intersection of Delaware and Delavan Avenues were negligently designed in that the “clearance interval” — the four-second interval between the time the green signal for east-west traffic on Delavan Avenue ended and the signal for north-south traffic on Delaware Avenue turned green — was too short, with the result, in this instance, that east-west traffic was “green-lighted” before all of the north-south traffic had cleared the intersection. The city’s evidence was that the lights had been designed and installed by its Board of Safety, that ample study of traffic conditions at the intersection, including numerous traffic checks, had been made prior to their installation in 1952 and that there was no showing of any other accident in the more than three years which had elapsed since that time.
The jury was instructed (1) to find the defendant city liable if it was negligent in failing to provide a sufficient “ clearance interval” and (2) to find the defendants Fote and Alexander liable if they drove into the intersection negligently. In each case, a verdict was returned in favor of the plaintiff, but only against the City of Buffalo; the consequent judgments were unanimously upheld by the Appellate Division, and the appeals, taken by both the city and the plaintiff Weiss, are here by permission of this court.
On the appeal by Mrs. Weiss from the judgment in favor of Alexander and the Fotes, we may simply say that there is no basis, on the record before us, for interfering with it; indeed, her suit was actually tried on the theory that the City of Buffalo alone was negligent. Consequently, we need concern ourselves solely with the question of the latter’s liability, and as to this it is our conclusion that the evidence fails to show a breach of any duty owed to the plaintiffs by the city.
Even before the Legislature had, by the enactment of what is now section 8 of the Court of Claims Act, provided for the general waiver of immunity by the State, the immunity enjoyed by the State and its subdivisions with respect to the mainte *584 nance of the streets and highways had already been withdrawn. Reviewing the case law, which antedated passage of the immunity waiver provision, the court in Annino v. City of Utica (276 N. Y. 192, 196), declared that a municipality “ owed to the public the absolute duty of keeping its streets in a reasonably safe condition for travel ’ ’. (See, also, Brusso v. City of Buffalo, 90 N. Y. 679; Storrs v. City of Utica, 17 N. Y. 104.) But, in measuring that duty, we have long and consistently held that the courts would not go behind the ordinary performance of planning functions by the officials to whom those functions were entrusted. This rule, announced in 1883 in Urquhart v. City of Ogdensburg (91 N. Y. 67), has been uniformly followed since that time. In the Urquhart case, the court denied liability for injuries arising out of a “ radical defect ’ ’ in the plan of a sidewalk built by the municipality, and in the course of its opinion wrote (p. 71):
“ The rule is well settled that where power is conferred on public officers or a municipal corporation to make improvements, such as streets, sewers, etc., and keep them in repair, the duty to make them is quasi judicial or discretionary, involving a determination as to their necessity, requisite capacity, location, etc., and for a failure to exercise this power or an erroneous estimate of the public needs, no civil action can be maintained. ’ ’
The rationale of the decision is found in language quoted by the court from Chief Judge Cooley’s opinion in Lansing v. Toolan (37 Mich. 152, 154): “ Courts and juries are not to say [municipal corporations] shall be punished in damages for not giving to the public more complete protection; for * * * that would be to take the administration of municipal affairs out of the hands to which it has been entrusted by law.”
It is significant, we believe, that the body of cases which follows Urquhart (see, e.g., Watson v. City of Kingston, 114 N. Y. 88, 91; Paine v. Village of Delhi, 116 N. Y. 224, 228; Stern v. International Ry. Co., 220 N. Y. 284, 294; Barrett v. State of New York, 220 N. Y. 423, 430-431; Pitman v. City of New York, 141 App. Div. 670, 672; Treadwell v. City of Yonkers, 192 App. *585 Div. 421, 423) is completely set apart by its distinctive rationale from the body of cases which denies municipal liability on the broad ground that the sovereign can do no wrong. (See, e.g., Maximilian v. Mayor, 62 N. Y. 160,164-165; Lefrois v. County of Monroe, 162 N. Y. 563, 566-567; Wilcox v. City of Rochester, 190 N. Y. 137, 141-142; Matter of Gewerts v. Berry, 258 N. Y. 505, 508.) The first set of cases rests immunity on the policy of maintaining the administration of municipal affairs in the hands of state or municipal executive officers as against the incursion of courts and juries, while the other rests the immunity on the sovereign character of the state or municipality in the performance of its governmental functions. Bernardine v. City of New York (294 N. Y. 361) makes it clear that the line of cases which predicated immunity from suit on the mere abstract principle of governmental sovereignty lost its legal force and effect with the passage of the Court of Claims Act. But Urquhart v. City of Ogdensburg (91 N. Y. 67, supra) and the cases which follow it retain their vitality in our system of law, since there is no indication in section 8 of the Court of Claims Act that the State intended to broaden the scope of liability in an area where the sovereign immunity rule had already been withdrawn.
Lawfully authorized planning by governmental bodies has a unique character deserving of special treatment as regards the extent to which it may give rise to tort liability. It is proper and necessary to hold municipalities and the State liable for injuries arising out of the day-by-day operations of government —for instance, the garden variety injury resulting from the negligent maintenance of a highway — but to submit to a jury the reasonableness of the lawfully authorized deliberations of executive bodies presents a different question. (See Dalehite v. United States, 346 U. S. 15, 42; Feres v. United States, 340 U. S. 135,141-142; United States v. Union Trust Co., 221 F. 2d 62, 75-78, affd. 350 U. S. 907; 2 Harper and James, Law of Torts [1st ed., 1956], p. 1608; Herzog, Liability of the State of New York for “ Purely Governmental ” Functions, 10 Syracuse L. Rev. 30, 31-33; Peck, The Federal Tort Claims Act: A Proposed Construction of the Discretionary Function Exception, 31 Wash. L. Rev. 207, 209.) To accept a jury’s verdict as to the reasonableness and safety of a plan of governmental serv *586 ices and prefer it over the judgment of the governmental body which originally considered and passed on the matter would be to obstruct normal governmental operations and to place in inexpert hands what the Legislature has seen fit to entrust to experts. Acceptance of this conclusion, far from effecting revival of the ancient shibboleth that ‘[1] the king can do no wrong ”, serves only to give expression to the important and continuing need to preserve the pattern of distribution of governmental functions prescribed by constitution and statute.
In the case before us, the Common Council of Buffalo, acting through its delegated agent, the Board of Safety, made extensive studies of traffic conditions at the intersection of Delaware and Délavan Avenues. It was its considered judgment, based on these studies, that four seconds represented a reasonably safe [1] ‘ clearance interval ’ ’ and there is nothing to suggest that its decision was either arbitrary or unreasonable. To state the matter briefly, absent some indication that due care was not exercised in the preparation of the design or that no reasonable official could have adopted it — and there is no indication of either here — we perceive no basis for preferring the jury verdict, as to the reasonableness of the “clearance interval”, to that of the legally authorized body which made the determination in the first instance. Indeed, as we read the lengthy and involved body of testimony before the jury, there is ample basis for doubting that body’s capacity to arrive at a conclusion as to the “ clearance interval’s ” reasonableness.
The plaintiffs contend that the Court of Claims Act destroyed any and all facets of governmental immunity and that numerous decisions of this court have so held. Such a reading of the statute and our cases is mistaken. In providing that “ The state hereby waives its immunity from liability and action and hereby assumes liability and consents to have the same determined in accordance with the same rules of law as applied to actions in the supreme court against individuals or corporations ” (Court of Claims Act, § 8), the Legislature intended to put an end to the immunity of the State which derived from its status as a sovereign. In other words, it was the legislative design that, in respect of its legal status, the State be treated like any individual or corporation. This is far different from *587 saying, however, that the Court of Claims Act places the State on a parity with private corporations or individuals in respect of all of its defenses. Neither the language of the statute nor its tenor supports such a view.
Nor is it sustained by our decisions. In Bernardine v. City of New York (294 N. Y. 361, supra), the injury sued upon was caused by a runaway police horse, and we found the municipality liable because its sovereign status was not a defense; maniifestly, no question of immunity for acts of planning government services was raised. In McCrink v. City of New York (296 N. Y. 99), the injury resulted from the Police Commissioner’s having retained an habitual drunkard on the force, and we held that the city was subject to liability; but, here again, there was' no question concerning the exercise of expert judgment in the course of government planning for the public safety. In Murphy v. De Revere (304 N. Y. 922), Nuss v. State of New York (301 N. Y. 768) and Van de Walker v. State of New York (278 N. Y. 454), the court was solely concerned with the defendant’s liability for improper maintenance or operation of a traffic signal, not its planning or designing.[1] And, in Eastman v. State of New York (303 N. Y. 691), although the suit seems to have been predicated, in part, on the State’s negligence in planning an intersection without a stop sign, our affirmance rested on an entirely different theory. The court’s decision simply reflected the rule that, once having planned the intersection, the State was under a continuing duty to review its plan in the light of its actual operation and that the proof established a breach of such duty. More particularly, the court considered, as sufficient to demonstrate a violation of the State’s continuing obligation to maintain the safety of the highways, evidence that physical conditions had changed at the intersection and that a number of accidents had occurred after the stop sign had been removed. In the case before us, however, the situation is quite different; there is no showing that the continuing obligation which, rested *588 on the municipality was violated. There is no proof either of changed conditions or of accidents at the intersection which would have required the city to modify the signal light [1]‘ clearance interval ”. In point of fact, it appeared that the signal lights had operated for upwards of three years, with an estimated 1,521,705 traffic changes, without evidence of a single accident.
To conclude: The immunity which the State enjoyed solely by reason of its status as a sovereign had been severely criticized as unjust and ill adapted to the facts of modern life. The State’s explicit waiver of such immunity reflected the felt needs of the times. Nothing in the legislative history of the Court of Claims Act, however, indicates that the waiver provision was designed to override the well-defined and carefully reasoned body of law governing the measure of the State’s responsibility for highway safety. The city’s defense which we here sustain rests not on any anachronistic concept of sovereignty, but rather on a regard for sound principles of government administration and a respect for the expert judgment of agencies authorized by law to exercise such judgment. In.the area of highway safety, at least, it has long been the settled view, and an eminently justifiable one, that courts should not be permitted to review determinations of governmental planning bodies under the guise of allowing them to be challenged, in negligence suits; something more than a mere choice between conflicting-opinions of experts is required before the State or one of its subdivisions may be charged with a failure to discharge its duty to plan highways for the safety of the traveling public. No such evidence was offered here.
To those who begin with the assumption that the signal light design involved in this case was faulty, our decision must of riecessity seem harsh and reminiscent of outmoded theories of governmental immunity. BuL it is precisely the validity of that assumption which is at issue; to assume its validity is to beg the question. We are of the opinion tha* the traditional reliance on a jury verdict to assess fault and general tort liability is misplaced where a duly authorized public planning body has entertained and passed on the very same question of risk as would ordinarily go to the jury. Although a jury verdict is to be highly regarded, it is neither sacrosanct nor preferable to the *589 judgment of an expert public planning body. For this reason, liability for injury arising out of the operation of a duly executed highway safety plan may only be predicated on proof that the plan either was evolved without adequate study or lacked reasonable basis.
In each action, the judgment insofar as appealed from by the City of Buffalo should be reversed and the complaint dismissed, with costs in all courts. In action No. 1, the judgment insofar as appealed from by the plaintiff, Weiss, should be affirmed, without costs.

. The same is true of Johnston v. City of East Moline (405 Ill. 460) — upon which the dissent relies (p. 590) —for there the intersection collision occurred at a time when, to the city’s knowledge, the traffic signal, which was supposed to control westbound traffic, was unlighted and out of commission. It should also be noted that the quotation from Rhyne on Municipal Law, appearing in the dissenting opinion (p. 590), likewise relates only to the “ operation ” of traffic lights.