TIMOTHY B. KELLY, JR., Respondent, v STATE OF NEW YORK, Appellant. (Claim No. 60060.)

Fourth Department, May 20, 1977

*Louis J. Lefkowitz, Attorney-General (Jeremiah Jochnowitz* and *Ruth Kessler Toch* of counsel), for appellant.

*Richard A. Kerner* for respondent.

GOLDMAN, J. Claimant-respondent Timothy B. Kelly, Jr. was an inmate at the Attica Correctional Facility during the insurrection of September 9-13, 1971. In his claim he alleges: (1) That New York State Police, National Guardsmen and correctional officers, on or about September 13, 1971, did "Shoot, threaten, menace, beat, strike, injure and otherwise harm" him, causing serious injuries "believed to be permanent and progressive in nature"; (2) that such officers converted various items of his personal property; (3) that for approximately four days after September 13, 1971, the State provided improper medical and hospital treatment which exacerbated his injuries; and (4) that "during the said post-assault period", he "was forced to endure various malicious acts of torture, brutality, humiliation, pain and suffering" inflicted upon him by the officers. Alleging that the officers were acting in the course of their official duties and that the specified acts were "malicious, wanton, intentional, reckless,

improper and negligent", claimant seeks compensatory and punitive damages.

Claimant was continuously incarcerated from a time prior to September, 1971 until March 22, 1974, when he was released from custody at Matteawan State Hospital, a facility under the jurisdiction of the Department of Correction (7 NYCRR 101.2). Meanwhile, claimant's notice of intention to file a claim was filed December 9, 1971, within the 90 days limited by subdivisions 3 and 3-a of section 10 of the Court of Claims Act. The claim itself was filed March 12, 1976.

Upon the foregoing undisputed facts, the State unsuccessfully moved to dismiss the claim. On this appeal, the State contends: (1) that the claim should have been dismissed for untimely filing; and (2) that so much of the claim as sounds in negligence should have been dismissed on the merits on the authority of *Jones v State of New York* (33 NY2d 275, modfg 40 AD2d 227).

If a claimant is not under legal disability when his claim arises, and if a notice of intention to file a claim has been timely filed, then a "claim to recover damages for injuries to property or for personal injury caused by the tort of an officer or employee of the state while acting as such officer or employee * * * shall be filed within two years after the accrual of such claim" (Court of Claims Act, § 10, subd 3). The same two-year time limit applies where the injury was caused by "the tort of a member of the organized militia" (Court of Claims Act, § 10, subd 3-a). However, if the claimant "shall be under legal disability, the claim may be presented within two years after such disability is removed" (Court of Claims Act, § 10, subd 5).

In September, 1971, when claimant's causes of action are alleged to have accrued, he was under legal disability to file his claim, for the Civil Rights Law then provided in effect that a State prisoner's right and capacity to institute an action or proceeding in a court were suspended during his incarceration (Civil Rights Law, § 79 [added by L 1965, ch 1031, § 26]; *Hewson v State of New York,* 27 AD2d 358, 360; *Lynch v Quinlan,* 65 Misc 2d 236; *O'Brien v McGinnis,* 63 Misc 2d 170, 171). That such suspension was recognized as a legal disability was reflected in the CPLR, which then provided with some qualifications that if a person was "imprisoned on a criminal charge or conviction" when the cause of action accrued, the statute of limitations was "extended by the period of disabil-

ity" (CPLR 208 [added by L 1962, ch 308, § 208]). Thus, as the law stood in 1971, a prisoner who suffered tortious injury at the hands of a correctional officer could present his claim against the State at any time within two years after release from prison (Crawford v State of New York, 37 AD2d 450).

Effective September 10, 1973, the Civil Rights Law was amended to provide, with exceptions not here pertinent, that "A sentence of imprisonment in a state correctional institution * * * shall not be deemed to suspend the right or capacity of any person so sentenced to commence and prosecute an action or proceeding in any court within this state" (Civil Rights Law, § 79, subd 2 [as amd by L 1973, ch 687, § 1]). By the same chapter of the Laws of 1973, CPLR 208 was amended, also effective September 10, 1973, to eliminate imprisonment "on a criminal charge or conviction" as grounds for tolling the statute of limitations (L 1973, ch 687, § 3; see, McLaughlin, 1973 Practice Commentary to CPLR 208, 7B McKinney's Cons Laws of NY, 1976-1977 Pocket Part, p 36). The State therefore urges that on the effective date of these amendments the claimant's "legal disability" to assert his claim was "removed" within the meaning of subdivision 5 of section 10 of the Court of Claims Act so that he had two years after that date—i.e., until September 10, 1975—to file his claim. Because he did not do so until March 12, 1976, the State contends that his claim is untimely.

It is claimant's position that despite the 1973 amendment to section 79 of the Civil Rights Law he remained under "legal disability" until his release on March 22, 1974, so that his filing on March 12, 1976 was timely. He urges that the application of the 1973 amendment to his claim would contravene section 93 of the General Construction Law which forbids application of a repealing statute in such a way as to "affect or impair" a "right accruing, accrued or acquired * * * prior to the time such repeal takes effect". It has been said that "[a] repealing statute which preserves rights contemplates definite and substantial ones which are, or are in the nature of, vested property rights and not merely inchoate personal privileges to which in a legal sense one has no indefeasible vested claim" (Matter of Wentworth, 230 NY 176, 187). Thus, for example, section 93 of the General Construction Law has been held not to forbid a retroactive change in remedies upon an accrued liability (People v Bruno, 176 App Div 56). The only direct and immediate effect of the Civil Rights Law amendment here in

question is to expand a prisoner's right to sue while incarcerated. Read together with subdivision 5 of section 10 of the Court of Claims Act, the amendment does operate to hasten the day when a prisoner must assert his tort claim against the State, and in this remote sense it might be said to impair a prisoner's "right" to wait up to two years after release before pressing his claim. We conclude, however, that this right is neither so directly affected nor of such a nature as to come within the protection of section 93 of the General Construction Law.

More plainly inapposite is section 94 of the General Construction Law which by its terms applies only to "actions and proceedings * * * pending immediately prior to the taking effect of such repeal". Claimant's proceeding could not have been "pending" prior to the 1973 amendment to section 79 of the Civil Rights Law, because until that time he was without legal capacity to commence the proceeding.

In any event, it has been said of sections 93 and 94 of the General Construction Law that "[t]hese sections * * * like all provisions of the General Construction Law, are not to be applied when the 'general object' of the statute, 'or the context of the language construed, or other provisions of law indicate that a different meaning or application was intended'. (General Construction Law, § 110; see *People v Roper,* 259 N.Y. 635). They * * * 'provide merely a principle of construction', which governs 'In the absence of * * * contrary intent' " *(People v Oliver,* 1 NY2d 152, 159; see, also, *Jespersen-Kay Modular Constr. v Clinton Ave. Paul Place Houses,* 85 Misc 2d 721, 724). Here the Legislature plainly intended that persons imprisoned on the effective date of the simultaneous amendments to section 79 of the Civil Rights Law and CPLR 208 be governed by the amendments. The Legislature could as easily have chosen to remove the disability provision from section 79 while leaving intact the tolling provision of CPLR 208, so that a prisoner would have been given the option of suing while incarcerated or waiting until after release (see McLaughlin, 1973 Practice Commentary to CPLR 208, 7B McKinney's Cons Laws of NY, 1976-1977 Pocket Part, p 36). But by amending the two sections together in the same bill, the Legislature unmistakably manifested its intent that prisoners be required, and not merely permitted, to commence judicial proceedings in accordance with time limits applicable to nonprisoners. We conclude, therefore, that even if sections 93 and 94 of the

General Construction Law were otherwise applicable in this case, their requirements were overriden by a contrary legislative intent.

Claimant also invokes the rule that statutes changing a statute of limitations will not be given retroactive effect unless such legislative intent is clearly shown (*People v Cohen,* 245 NY 419, 421; *Metcalf v Central School Dist. No. 1,* 280 App Div 875; *Garcia v Deibert,* 19 Misc 2d 563). The rule is inapposite here, however, for there is no true attempt to apply the amendment to section 79 of the Civil Rights Law retroactively; it simply removes a legal disability as of its effective date. Nor does the amendment directly and necessarily operate to shorten a statute of limitations. It does not change the rule that a claimant under legal disability has "two years after the disability is removed" within which he may present his claim as of right (Court of Claims Act, § 10, subd [5]).

Claimant next argues that the phrase "legal disability", as used in subdivision 5 of section 10 of the Court of Claims Act refers not to legal incapacity to sue but rather to the practical hardships which render it difficult for a claimant to prosecute a claim successfully while incarcerated. The section, however, includes no specific reference to imprisonment as such, and it is apparent that the general reference to "legal disability" is meant as a reference to the recognized grounds of legal incapacity to sue—infancy, insanity and (until Sept. 10, 1973) imprisonment—enumerated in CPLR 208. History supports this view. In *Marsala v State of New York* (41 AD2d 878), a case decided prior to the 1973 amendment to section 79 of the Civil Rights Law, the Third Department observed: " 'Legal disability attaches to one convicted of crime and sentenced to a State prison (Civil Rights Law, § 79; *Crawford v. State of New York* (37 A D 2d 450). Constraints imposed upon the freedom of a person before conviction and pending further criminal process are not sufficient to constitute disability within the meaning of subdivision 5 of section 10 [of the Court of Claims Act] *(Beebe v. State of New York,* 38 Misc 2d 485) *(Kurtz v. State of New York,* 40 A D 2d 917, 918)." Thus it was the fact of legal incapacity under the Civil Rights Law, and not the fact of incarceration per se, which triggered the tolling provision of subdivision 5 of section 10 of the Court of Claims Act. Therefore, although the practical hardships of conducting litigation from a prison cell are well recognized (see McLaughlin, *op. cit.; Ortiz v LaVallee,* 442 F2d 912, 914),

they do not constitute "legal disability" within the meaning of subdivision 5 of section 10 of the Court of Claims Act.

Because claimant's legal disability ceased on September 10, 1973, the filing of the claim on March 12, 1976 was not within the two-year period limited by subdivision 5 of section 10 of the Court of Claims Act for filing as of right after the removal of a legal disability. The section's timeliness-of-filing provisions are jurisdictional (*De Marco v State of New York,* 43 AD2d 768, affd on memorandum below 37 NY2d 735), and failure of compliance with them therefore requires the dismissal of the claim unless the Court of Claims permits late filing in the exercise of its discretion. However, under the law as it stood on March 12, 1976, the filing on that date was too tardy even to be eligible for acceptance on a discretionary basis, because the court's discretion was then limited to allowing late filing of a claim "within two years after the accrual thereof" (Court of Claims Act, § 10, subd 5 [L 1939, ch 860]).

We note that since the filing date herein, the late filing provision of section 10 of the Court of Claims Act has been renumbered and amended to provide as follows:

"6. A claimant who fails to file a claim or notice of intention, as provided in the foregoing subdivisions, within the time limited therein for filing the claim or notice of intention, may, nevertheless, in the discretion of the court, be permitted to file such claim at any time before an action asserting a like claim against a citizen of the state would be barred under the provisions of article 2 of the civil practice law and rules. * * * In determining whether to permit the filing of the claim pursuant to this subdivision, the court shall consider, among other factors, whether the delay in filing the claim was excusable; whether the state had notice of the essential facts constituting the claim; whether the state had an opportunity to investigate the circumstances underlying the claim; whether the claim appears to be meritorious; whether the failure to file a timely claim or notice of intention resulted in substantial prejudice to the state; and whether the claimant has any other available remedy." (Court of Claims Act, § 10, subd 6 [L 1976, ch 280, § 2, eff Sept. 1, 1976].)

Although the parties do not raise the question of the amendment's applicability to this case, we take judicial notice of its passage and we consider its applicability sua sponte (*Rippe v City of Rochester,* 57 AD2d 723 [April 15, 1977]). In *Rippe* we considered the retroactive applicability of an amend-

ment (L 1976, ch 745, eff Sept. 1, 1976) to the late notice-of-claim provision of subdivision 5 of section 50-e of the General Municipal Law. The purpose of the amendment, we observed, was "to vest in the courts broader discretion to consider all relevant facts and circumstances in deciding whether to extend the time to serve a notice of claim". Concluding that the amendment was "both procedural * * * and remedial", we held that it was retroactively applicable. (Accord, *Nolan v County of Otsego*, 55 AD2d 422; *Matter of Smalls v New York City Health Hosp. Corp.*, 55 AD2d 537, 538.) The Court of Claims Act amendment here at issue is quite analogous to the General Municipal Law amendment considered in *Rippe* (cf. L 1976, ch 280, § 2 with L 1976, ch 745, § 2). Like the amendment in *Rippe,* our amendment liberalizes the grounds and lengthens the time limits for discretionary acceptance of late claims. Moreover, it is at least as evident here as in *Rippe* that the amendment's purpose was remedial and ameliorative. Prior to the amendment, subdivision 5 of section 10 of the Court of Claims Act required a claimant applying for late filing to show a reasonable excuse and actual knowledge by the State, prior to the expiration of the 90-day period for filing the notice of intention, of the essential facts constituting the claim, as well as a lack of substantial prejudice to the State from the failure to file timely. Because these requirements were conjunctive, it was held that the failure to satisfy any one of them was fatal *(Turner v State of New York,* 40 AD2d 923). Under the amendment, however, these requirements are no longer cast in absolute terms, but are merely factors which "the court shall consider, among other factors" (Court of Claims Act, § 10, subd 6). From the Governor's memorandum approving the bill (1976 McKinney's Sess Laws of NY, p 2435), it appears that its aim was to create a fairer, more logical late claim procedure which would obviate the need to resort to private bills as a means of access to the Court of Claims.

We therefore conclude that subdivision 6 of section 10 of the Court of Claims Act may be applied retroactively (contra, *Sessa v State of New York,* 88 Misc 2d 454). Had claimant applied for late filing under the amendment, dismissal for untimeliness would still have been required to the extent that the claim alleged the intentional torts of assault and battery, to which a one-year Statute of Limitations applies under CPLR 215 (subd 3). However, to the extent that the claim sounds in negligence, malpractice and conversion, a three-year

Statute of Limitations controls (CPLR 214 [L 1962, ch 308]). The statute did not run on these causes until September 10, 1976 (i.e., three years after the imprisonment disability ceased on September 10, 1973), by which time the claim had been filed and the amendment had become effective. The court having held claimant's filing timely, the need for a late filing application was not evident during the period when it could have been timely made. In these circumstances, it would be within the discretion of the Court of Claims to entertain an application for a *nunc pro tunc* order declaring the March 12, 1976 notice of claim to have been timely filed, particularly since the State has had actual notice of the claim since 1971 (cf. *Mackney v State of New York,* 177 Misc 94, 96). Accordingly, the order should be reversed and the claim dismissed, without prejudice, however, to claimant's right to make formal application to the Court of Claims for late filing in accordance with the standards of subdivision 6 of section 10 of the Court of Claims Act.

In its second point the State contends: that the suppression of the Attica insurrection was a "governmental function"; that "negligence in the manner of planning a governmental function is not actionable and the State is immune from liability for injury resulting therefrom"; and that so much of the claim as alleges negligence should therefore have been dismissed on the merits. Both parties rely primarily on *Jones v State of New York* (33 NY2d 275, modfg 40 AD2d 227). There a clerical employee of the Department of Corrections was killed during the retaking of Attica. His administratrix asserted false imprisonment, wrongful death and survivorship claims against the State. In her first cause of action she alleged that the State was negligent in failing to warn decedent of the impending riot before he was taken hostage on September 9, 1971. The second cause alleged that during the retaking of the prison on September 13, 1971 a State trooper intentionally and unjustifiably shot decedent to death. We dismissed the claim by a closely divided court, the majority taking the view that "The decision by State officials charged with the responsibility for controlling prisoners at Attica to suppress the prison riot and retake control of the institution" was an instance of "the exercise of judgment in the course of governmental planning for the public safety", in which the "inexpert opinion of a court or jury is not to be accepted over the expert opinion of the agency to which the subject has been en-

trusted" (40 AD2d, at p 229). The Court of Appeals, also by a close vote, modified our order by reinstating the intentional tort cause of action. The court, per BURKE, J., stated: "[W]ith the waiver of immunity effected by [Court of Claims Act, § 8], the State and its civil subdivisions became liable for the torts of their agents on the basis of *respondeat superior,* notwithstanding the fact that the agent was engaged in 'governmental' activity. * * * The action of retaking the prison is no more 'governmental' than making an arrest, maintaining someone in custody or investigating a traffic infraction. The use of excessive force by troopers during these activities was sufficient to fasten liability upon the State. A different rule should not apply here. Should the Judge in the Court of Claims find that the force used against the decedent was more than necessary under all the circumstances, then plaintiff is entitled to recover" (33 NY2d, at p 280).

Thus the State does not deny that the instant claim states causes of action for the intentional torts of assault and battery although, as we have concluded, those claims are time-barred. But from the affirmance of the dismissal of the negligence cause of action in *Jones,* the State infers that the Court of Appeals agreed with the view taken by this court, including the dissenters (see 40 AD2d, at p 232 [CARDAMONE, J., dissenting]) that the State was immune insofar as the claim alleged negligence in "governmental planning". However, a careful reading of the Court of Appeals decision reveals that our dismissal of the negligence cause of action was affirmed on the narrow ground that workmen's compensation was the exclusive remedy, because the claim alleged that the decedent was in the course of his employment at the time of the State's negligence (33 NY2d, at p 279). It therefore appears that the Court of Appeals majority did not consider whether the "governmental planning" doctrine was correctly applied to dismiss the negligence cause of action in *Jones.* Significantly, even the three dissenters in the Court of Appeals, who would have affirmed the dismissal of both causes, acknowledged "a host of cases recognizing municipal liability under the Court of Claims Act for the negligence of law enforcement officers in the line of duty" (33 NY2d, at p 283).

*Jones* is factually distinguishable from the present case in any event. There the negligence alleged in the claim consisted in the failure of prison officials, who "knew or should have known that prisoners under their control were going to riot",

to warn their employee of the impending riot and to "take proper and timely measures" to effect his release after he was taken hostage. Thus the claim called into question the decisions of the highest managerial and executive officials upon matters peculiarly within the province of professional judgment—namely, the evaluation of the risk of a violent outburst at a given point in time, the formulation of such extraordinary employee safety measures as might be appropriate in light of that risk when balanced against the need to maintain the orderly and efficient functioning of the facility, and later, the charting of policies and strategies to be pursued in restoring order and recovering the hostages. Thus the *Jones* allegations, if proved, would have presented a true instance of negligence in "governmental planning". The instant claim contrasts sharply with the *Jones* claim. Here there is no allegation that executive or managerial officials responsible for the supervision of the prison were in any wise negligent in planning or decision making. The claimant complains instead of the alleged excesses of the State agents who carried the plan into practical effect. The allegations of conversion of personalty do not sound in negligence at all; the allegations of malpractice in the treatment of the claimant's injuries for several days *after* the retaking are quite remote from any notion of "governmental planning". Even the allegations as to the circumstances in which claimant was wounded speak of negligence in the practical execution of the plan rather than in the making of it.

Apart from *Jones,* the other cases upon which the State relies for its sovereign immunity argument are also distinguishable. *Weiss v Fote* (7 NY2d 579)—which a majority of the Court of Appeals in *Jones* deemed irrelevant (33 NY2d, at p 280)—held that a city was not liable for "injury arising out of a duly executed highway safety plan", absent "proof that the plan either was evolved without adequate study or lacked reasonable basis" (7 NY2d, at p 589). Significantly, the *Weiss* court distinguished *Van de Walker v State of New York* (278 NY 454) on grounds that there "the court was solely concerned with the defendant's liability for improper maintenance or operation of a traffic signal, not its planning or designing" (7 NY2d, at p 587). The court went on to distinguish other cases where liability was predicated upon negligence in the inspection or maintenance of traffic control devices. Thus the *Weiss* court was plainly cognizant of the

distinction between the making of a governmental plan and the practical implementation thereof. The same can be said of *Young v State of New York* (40 AD2d 730, mot for lv to app den 31 NY2d 646), where the claimant alleged that she had been wrongfully detained in Matteawan State Hospital. Insofar as the claim alleged (pp 731-732) that "the State failed to provide an adequate staff of physicians for the care, supervision and proper evaluation" of her condition, it was dismissed on the grounds that " 'The frequency and amount of psychiatric treatment or care to be furnished to a prisoner is an administrative decision, and the type of treatment to be afforded him is a governmental function' ", as to which " 'the State has never waived its immunity' " (40 AD2d, at p 732, quoting *Bellows v State of New York,* 37 AD2d 342, 344; accord, *Ferrucci v State of New York,* 42 AD2d 359, affd without opn 34 NY2d 881). But insofar as the claim alleged negligent failure to make a proper diagnosis, the dismissal rested not upon the "governmental planning" doctrine but upon failure of proof, or alternatively, upon narrow rules, inapposite here, regarding the liability of the State for errors in medical judgment. Had the claim alleged that a course of treatment, once decided upon, had been negligently administered to the injury of the claimant, a different question would have been presented. It is noteworthy that decisions interpreting the so-called "discretionary function" exception from liability under the Federal Tort Claims Act also recognize a distinction between "decisions made at the planning level" and "decisons made on the operational level of governmental activities" *(United Airlines v Wiener,* 335 F2d 379, 392-393). Finally, the broad statement in *Newiadony v State of New York* (276 App Div 59, 62) that "there is no responsibility under substantive municipal law for the acts of a sovereign in war or the suppression of public disorders" clearly has not survived the Court of Appeals decision in *Jones (supra).*

It is true that claimant might not have sustained his injuries had there not been a governmental decision to retake the prison by force, and it may be that certain other elements of the cause of his injuries are traceable to decisions which would come within the "governmental planning" rule. But this is not to say that any act, however negligent, of any State agent, however far removed from the ultimate decision making power, is clothed in sovereign immunity simply because it bore some relationship, however tenuous, to an act of govern-

mental planning by a responsible official. We therefore conclude that the claim, read in the light most favorable to the claimant and with all reasonable inferences drawn therefrom, does state causes of action for negligence which are not barred by the "governmental planning" rule. At the least, summary dismissal of the negligence causes on the merits at this stage of the litigation would be "inappropriate and premature", there having been no discovery *(Jones v State of New York,* 40 AD2d 227, 230, *supra* [CARDAMONE, J., dissenting]; see, also, 33 NY2d, pp 280-281).

The order of the Court of Claims should be reversed and the claim dismissed on the sole ground that it was not filed within two years of the removal of the disability for imprisonment. The dismissal is without prejudice, however, to claimant's right to make formal application pursuant to subdivison 6 of section 10 of the Court of Claims Act, for a *nunc pro tunc* order deeming the claim to have been timely filed.

CARDAMONE, J. P., SIMONS, DILLON and WITMER, JJ., concur.

Order unanimously reversed without costs, motion granted and claim dismissed without prejudice in accordance with opinion by GOLDMAN, J.