■ St. Vladimir's Orthodox Theological Seminary, Respondent, v State of New York et al., Appellants. (Claim Nos. 57507, 57940.) (Action No. 1.) Clifford Porter et al., Respondents, v State of New York et al., Appellants. (Claim Nos. 57508, 57821.) (Action No. 2.)—Appeals from judgments in favor of claimants, entered March 2, 1977 and April 13, 1977, upon decisions of the Court of Claims. From 1961 and 1965 claimants, St. Vladimir's Orthodox Theological Seminary (Seminary) and the Porters, respectively, had owned adjoining properties in Yonkers, New York, adjacent to a watercourse known as Troublesome Brook. In 1969 the City of Yonkers requested the New York State Department of Transportation to devise plans for a relief sewer project to alleviate flooding problems in the brook. It appears that the State's authority to provide this service was pursuant to section 10 of the Highway Law. Accordingly, the City of Yonkers passed a resolution in June, 1970 authorizing the city manager to enter into a construction agreement with the State. The agreement, signed by the Commissioner of Transportation on June 25, 1970, provided that the State would construct a 96-inch diameter metal pipe relief sewer along the existing channel of the brook, that the State's liability would be limited to the construction costs and that the City of Yonkers would assume all maintenance and repair responsibilities. Construction was begun in December, 1970 and completed in October, 1971. As part of the installation of the relief sewer, a bridge underpass on the seminary's property was blocked and a concrete basin was created at the inlet to the 96-inch pipe. At the bottom of this basin a 15-inch dry weather flow pipe was installed, with a metal grate to prevent debris from entering. Behind this small pipe a concrete

wall was built and behind this was the invert of the 96-inch pipe. The pipe ran for 2,600 feet to its outlet in the Bronx River. Immediately in front of the pipe's invert, a large grating was contructed of vertical metal bars approximately three-quarter inch in diameter and spaced at six- to eight-inch intervals. The purpose of the grating was primarily to keep children out of the pipe, although a secondary effect was to keep debris out of the pipe. In June, 1972 Hurricane Agnes passed through the Yonkers area and caused a disastrous rainfall. No flooding of claimants' properties occurred, but the metal grating in front of the 96-inch pipe was severely damaged by an accumulation of debris in front of it. The City of Yonkers immediately installed a similar, but not identical, replacement grating. After another heavy rainfall on November 8, 1972 damaged the grating through the accumulation of debris, the City of Yonkers installed another replacement grating, now adding horizontal bars to the vertical bars. The State was not involved with either grating replacement or design change. On July 21, 1973 a third heavy rainstorm again caused an accumulation of debris at the grating. This time the metal gate withstood the pressure, the water was dammed behind it and the properties of the claimants were flooded. It appears that the flooding was caused by blockage of the grating. After a joint trial of these claims, the Court of Claims rendered judgments in favor of claimants, holding that the State was negligent in the construction and design of the grating, that it had control over the installation of the replacement gratings and that it had notice of the inadequacy of the grating design for the conditions of Troublesome Brook. We disagree. The State has been held immune from suit for defects in the design of culverts and drains absent a "clear showing of defect" *(Morris v State of New York,* 10 AD2d 754, 755; see, also, *Incorporated Vil. of Flower Hill v State of New York,* 7 AD2d 940). Even when the State has been held liable, the key element has been a finding that the State did not act in accordance with proper construction and engineering practices *(Bronxville Palmer v State of New York,* 33 AD2d 412). In the analogous area of highway safety and design, the Court of Appeals has ruled that in analyzing the question of the State's liability "courts should not be permitted to review determinations of governmental planning bodies under the guise of allowing them to be challenged in negligence suits; something more than a mere choice between conflicting opinions is required" *(Weiss v Fote,* 7 NY2d 579, 588; see, also, *Franks v State of New York,* 55 AD2d 978, mot for lv to app den 41 NY2d 805). Such conflicting expert testimony is exactly what appears in this record. The opinion of claimants' expert that the grating design was inadequate was contradicted by two of the State's witnesses. The record also reveals that the design implemented was the product of extensive preparation and study. We disagree with the finding below of inadequate design. We also reject the Court of Claims conclusion that the State had control over the installation of the replacement gratings after the two storms during 1972. A substantial State role was clearly precluded by the contract under which the City of Yonkers was to assume full responsibility for all maintenance after the initial installation. We find in this record no evidence that the State was "in control" of the subsequent repairs to an extent sufficient to be a predicate for liability *(Morris v State of New York, supra).* The record indicates that there had been no significant flooding of either of claimants' properties by Troublesome Brook until the storm of July 21, 1973, which resulted in the instant claims. As such, we find no notice of a condition or defect which would impart liability to the State. Judgments reversed, on the law and the facts, and claims dismissed, without costs. Sweeney, J. P., Staley, Jr., Larkin, Mikoll and Herlihy, JJ., concur.