■ DENISE LONGO, an Infant, by Her Parent and Natural Guardian, JOSEPH LONGO, et al., Appellants, v VINCENT TAFARO, Defendant, and CITY OF NEW YORK, Respondent.—In a negligence action to recover damages for personal injuries, etc., the plaintiffs appeal from (1) so much of a judgment of the Supreme Court, Richmond County (Sangiorgio, J.), entered May 12, 1986, as, upon granting a motion by the City of New York at the close of the plaintiffs' case to dismiss the plaintiffs' complaint insofar as it is asserted against it, is in favor of the City of New York and against them, and (2) an order of the same court, dated September 9, 1986, which denied the plaintiffs' motion for a new trial.

Ordered that the judgment is affirmed insofar as appealed from, and the order is affirmed, without costs or disbursements.

The instant action arises out of an accident which occurred on the evening of July 30, 1979, on Hylan Boulevard near its intersection with Stobe Avenue in Staten Island. The infant plaintiffs, Denise Longo and Donna Amato, had been in the process of crossing Hylan Boulevard when they were run down by the defendant Vincent Tafaro as they paused in the painted median that separated the east and westbound traffic. The median was 10 feet wide and consisted of an outer perimeter of double yellow lines, which surrounded an interior of diagonal solid white lines. The defendant Tafaro was observed driving erratically, speeding and straddling the painted median just prior to the incident. Tafaro did not stop at the scene and was pursued by a witness to the accident to the Verrazano Narrows Bridge, where he was arrested.

The plaintiffs' primary allegation against the defendant City of New York was that the city negligently failed to install a raised concrete median at the section of Hylan Boulevard where the accident occurred. The plaintiffs claimed that had the median been in place, the accident could have been avoided.

At the close of the plaintiffs' case, the city's motion to dismiss all claims against it for failure to prove a prima facie case was granted. Thereafter, the plaintiffs' motion for a new trial of their claims against the defendant City of New York was denied and this appeal ensued.

As this court stated in *Santiago v Steinway Trucking* (97 AD2d 753, 754): "In reviewing the dismissal of plaintiffs' complaint at the close of their case, this court is required (as was the trial court) to view the evidence adduced in the light most favorable to plaintiffs, and all questions as to a particular witness' credibility must be resolved in plaintiffs' favor *(Calvaruso v Our Lady of Peace R.C. Church,* 36 AD2d 755; see *Lipsius v White,* 91 AD2d 271, 276). Plaintiffs are entitled to the benefit of all inferences which can reasonably be drawn from the evidence *(Becker v Pryschlak,* 94 AD2d 753; *Carter v Castle Elec. Contr. Co.,* 26 AD2d 83). The applicable criterion is not the weighing of the proof, but rather, the trial court must determine whether, upon any rational basis, the triers of fact could find in plaintiffs' favor *(Calvaruso v Our Lady of Peace R.C. Church, supra;* 4 Weinstein-Korn-Miller, NY Civ Prac, par 4401.05; Siegel, NY Prac, § 402, p 529)". In the

instant case, the triers of fact could not have found in the plaintiffs' favor against the city upon any rational basis.

As the Court of Appeals stated in *Friedman v State of New York* (67 NY2d 271, 283-284):

"It has long been held that a municipality ' "owe[s] to the public the absolute duty of keeping its streets in a reasonably safe condition" ' *(Weiss v Fote,* 7 NY2d 579, 584, *supra,* quoting *Annino v City of Utica,* 276 NY 192, 196; *see also, Lopes v Rostad,* 45 NY2d 617, 623). While this duty is nondelegable, it is measured by the courts with consideration given to the proper limits on intrusion into the municipality's planning and decision-making functions. Thus, in the field of traffic design engineering, the State is accorded a qualified immunity from liability arising out of a highway planning decision *(Alexander v Eldred,* 63 NY2d 460, 465-466; *Weiss v Fote,* 7 NY2d 579, 585-586, *supra).* In the seminal *Weiss* case, we recognized that '[t]o accept a jury's verdict as to the reasonableness and safety of a plan of governmental services and prefer it over the judgment of the governmental body which originally considered and passed on the matter would be to obstruct normal governmental operations and to place in inexpert hands what the Legislature has seen fit to entrust to experts' (7 NY2d, at pp 585-586, *supra).* The *Weiss* court examined a municipality's decision to design a traffic light with a four-second interval between changing signals, and concluded that there was no indication that 'due care was not exercised in the preparation of the design or that no reasonable official could have adopted it' *(id.,* at p 586). We went on to note that 'something more than a mere choice between conflicting opinions of experts is required before the State or one of its subdivisions may be charged with a failure to discharge its duty to plan highways for the safety of the traveling public' *(id.,* at p 588).

"Under this doctrine of qualified immunity, a governmental body may be held liable when its study of a traffic condition is plainly inadequate or there is no reasonable basis for its traffic plan *(Alexander v Eldred,* 63 NY2d 460, 466, *supra* [municipality's traffic engineer's mistaken belief that the city had no authority to place a stop sign on a private road]). Once the State is made aware of a dangerous traffic condition it must undertake reasonable study thereof with an eye toward alleviating the danger *(Heffler v State of New York,* 96 AD2d 926, 927; *Sanford v State of New York,* 94 AD2d 857, 859; *Atkinson v City of Oneida,* 77 AD2d 257). Moreover, after the State implements a traffic plan it is 'under a continuing duty

to review its plan in the light of its actual operation' *(Weiss v Fote,* 7 NY2d 579, 587, *supra; Atkinson v City of Oneida,* 77 AD2d 257, 261, *supra)".*

In the instant case the record reveals that from the 1960's to the early 1970's the city installed raised median barriers on Hylan Boulevard between Arden Avenue and Stueben Street except for a 10-block stretch which included the area of the accident. It was established, however, that the median was not installed in that area because the roadway was below legal grade and it was anticipated that the grade might have to be changed. Thus, it cannot be said that the city's traffic plan lacked a reasonable basis.

Moreover, only a few years after this initial installation was completed, the city hired the firm of Browne & Associates to study the major roads of Staten Island (including Hylan Boulevard) and to develop traffic engineering solutions to eliminate any problems that might exist. Browne & Associates began their surveys of the area in 1975 and subsequently identified 23 areas of concern in their problem identification report which was completed in April 1976. Of the 23 areas of concern, Hylan Boulevard East (the area in question) was ranked fourteenth overall and a report was thereafter completed in September 1977 noting the specific safety deficiencies associated with that location.

The September 1977 report noted safety deficiencies along Hylan Boulevard in the form of "discontinuity and inadequate design of its median, poor pavement condition, and non-coordination of the signal system". That report recommended, *inter alia,* that a raised median be installed all along the roadway to improve its continuity because a driver unfamiliar with an area is often unprepared for a sudden change in the roadway section. The report noted, however, that certain immediate steps could be taken to improve the section of Hylan Boulevard in question, notably, the configuration of the painted median could be changed.

In accordance with the recommendations in the September 1977 report, the roadway was repaired, the configuration of the painted median was changed and a traffic light was installed. While it is true that the city did not take steps to install the raised median as recommended, it should be noted that the problem identification report indicated that the area in question was not a particularly dangerous one (in fact, it was not listed anywhere on its list of 165 dangerous locations) and consequently it was not given a high priority for improve-

ment. Moreover, the record reveals that the installation of the median would have involved a widening of the roadway and major reconstruction, and that, therefore, budget limitations prevented the immediate implementation of such a plan.

Additionally, while the plaintiffs correctly note that the city did not paint arrows in the left turn bays of the repainted median, as recommended by the September 1977 report, the plaintiffs' own expert testified that such arrows were not required. In any event, even assuming that the arrows would have been preferable, funding limitations justifiably deferred this low-priority item.

In view of the foregoing, it is clear that even when the evidence is viewed in the light most favorable to the plaintiffs, the trier of fact could not have found in the plaintiffs' favor against the city on any rational basis. The city's initial plan had a reasonable basis and the city met its obligation to review its plan in light of its actual operation. Accordingly, the plaintiffs' complaint was properly dismissed as against the defendant city. Lawrence, J. P., Kunzeman, Kooper and Balletta, JJ., concur.