■ BERTHA M. OLSON, as Administratrix of the Estate of WILLIAM S. OLSON, Deceased, Respondent-Appellant, v STATE OF NEW YORK, Appellant-Respondent. (Claim No. 68891.)—In a negligence claim to recover damages for personal injuries and wrongful death, (1) the defendant appeals, as limited by its brief, from so much of a judgment of the Court of Claims (McCabe, J.), dated January 7, 1987, as is in favor of the claimant and against it in the principal sum of $426,384.75, and (2) the claimant cross-appeals, as limited by her brief,

from so much of the same judgment as found, *inter alia,* that the decedent's culpable conduct was a proximate cause of the accident leading to his death, and apportioned fault equally between the State and the decedent.

Ordered that the judgment is affirmed, without costs or disbursements.

The instant claim arises out of a one-vehicle accident that occurred on Route 9G in the Town of Red Hook, Dutchess County, New York, on October 17, 1983, at approximately 5:30 A.M. There were no eyewitnesses. The decedent William Olson, was driving a tractor tanker truck, containing hot liquid asphalt, southbound on Route 9G, a two-lane highway, en route to a delivery point in the City of Poughkeepsie. As he attempted to maneuver through the first portion of a reverse "S" curve, just south of Lasher Road, he lost control of his vehicle which crossed the northbound lane and entered the shoulder on the east side of the roadway, striking a dirt embankment about three feet high. The tractor tanker then overturned and slid on its left side approximately 100 feet. As the vehicle slid along the ground, the cab of the tractor struck a utility pole which sheared off its roof. A 24-inch hatch cover on the top the tanker sprung open allowing hot liquid asphalt to spew out onto the shoulder of the roadway. The decedent, who had been ejected from the cab as a result of the collision with the pole, was found approximately 10 feet in front of the vehicle. He was later declared dead on arrival at a local hospital, the cause of death being asphyxia due to the forced ingestion and aspiration of liquid asphalt.

Thereafter, the claimant, Bertha Olson, as administratrix of the decedent's estate, commenced this action in the Court of Claims seeking damages for wrongful death and conscious pain and suffering, claiming that the accident and the subsequent demise of her husband was a result of the negligent maintenance of the roadway and its appurtenances by the State of New York.

Following a trial, the court found, in relevant part, that (1) the claimant had failed to establish that the decedent's vehicle had left the roadway as a result of the defendant's negligence, (2) the placement of the utility pole, which was struck by the decedent's vehicle, 13 feet from the edge of the pavement, violated good engineering practices and was a proximate cause of the decedent's injuries and subsequent death, (3) the condition of the roadway itself did not contribute to the accident, and (4) the decedent's own culpable conduct had caused the

vehicle to leave the roadway. The court apportioned fault equally between the decedent and the State.

It is axiomatic that the State owes the public a duty to keep its streets in a reasonably safe condition *(Weiss v Fote,* 7 NY2d 579, 584, *rearg denied* 8 NY2d 934). This duty must be measured, however, by giving adequate consideration to the proper limits of intrusion into the State's planning and decision-making functions *(see, Friedman v State of New York,* 67 NY2d 271, 283). Liability will be incurred only when its study of a traffic condition is clearly inadequate or without a reasonable basis *(Alexander v Eldred,* 63 NY2d 460, 466). Moreover, once the State has implemented a traffic plan, it is "under a continuing duty to review its plan in the light of its actual operation" *(Weiss v Fote, supra,* at 587; *Friedman v State of New York, supra,* at 284).

In the case at bar, the evidence demonstrated that the pole struck by the decedent had been relocated in 1975 as part of a "spot" safety improvement program. According to records of the New York State Department of Transportation the relocation was unsatisfactory. In fact, in an interdepartment memorandum dated October 29, 1975, a Department of Transportation traffic engineering group engineer noted: "Several of the poles have been relocated to positions that are just as hazardous to an errant vehicle as the old ones they replaced, especially since operating speeds may increase upon completion of the project * * * Since one of the major aspects of the Safety Improvement was to relocate the utility poles, which were repeatedly hit, to a less hazardous location, their current position is *totally unacceptable"* (emphasis added). Thereafter, the Department of Transportation took no further action to relocate the utility pole which was eventually struck by the decedent's vehicle in October 1983.

Since the Department of Transportation was on actual notice of the condition and yet failed to take corrective measures to alleviate the danger resulting therefrom, the Court of Claims properly determined that its failure to follow good engineering practices with regard to the hazardous location of the utility pole was a proximate cause of decedent's injuries and resulting death.

We further conclude that the trial court correctly determined that the absence of delineators and a warning sign on the roadway prior to the beginning of the curve was not a proximate cause of the accident.

Finally we see no reason to disturb the apportionment of

fault between the decedent and the State. Both the decedent's and the State's negligence were substantial factors and thus proximate causes of the ultimate harm. It was only through the decedent's negligent operation of the vehicle that he was placed in a position to be harmed by the negligence of the State. The trial court's equal apportionment of fault was a fair interpretation of the evidence. Thompson, J. P., Lawrence, Spatt and Harwood, JJ., concur.