■ MICHAEL J. ELMER, Respondent, v GERALD F. KRATZER et al., Defendants, and CITY OF NIAGARA FALLS, Appellant. [672 NYS2d 584] —Order reversed on the law without costs, motion granted and amended complaint against defendant City of Niagara Falls dismissed. Memorandum: Supreme Court should have granted the motion of defendant City of Niagara Falls (City) for summary judgment dismissing the amended complaint against it.

A tractor-trailer, operated by defendant Gerald F. Kratzer eastbound on Buffalo Avenue in the City, turned right to enter a driveway to the Alox plant. Plaintiff, who was operating a motorcycle, also eastbound, attempted to pass on the right and his motorcycle struck the tractor-trailer on the right front fender. Plaintiff sued the owner and operator of the tractor-trailer as well as the City. In his action against the City, plaintiff contended, inter alia, that the City was negligent in establishing Buffalo Avenue as a truck route without providing sufficient demarcation of traffic lanes, failing to widen Buffalo Avenue after it had been established as a truck route, failing to post signing indicating no passing and failing to enforce posted speed limits on Buffalo Avenue. After issue was joined, the City moved for summary judgment dismissing the amended complaint against it.

In support of its motion, the City submitted the affidavit of Thomas J. Miklejn, the Traffic Planner in the City's Public Works/Traffic Engineering Department. Although the view of the dissent is that Miklejn did not establish qualifications sufficient to render him an expert, his affidavit is based almost entirely on fact rather than on opinion. Based upon his familiarity with the circumstances leading to the establishment of Buffalo Avenue as a truck route, Miklejn states that Buffalo Avenue is classified as a minor urban arterial with a posted speed limit of 30 miles per hour, carries a 24-hour, two-directional traffic volume of 12,300 vehicles, and is striped with

a solid double yellow center line with one travel lane in each direction. He further states that Buffalo Avenue has a 42-foot paved width, and that the solid double yellow line is one foot wide, leaving 41 feet of driving width, or approximately 20.5 feet in each direction. According to Miklejn, if Buffalo Avenue were to be striped for four lanes with two lanes in each direction, each lane width would be 10.25 feet. "This width," he points out, "would be even less during the winter when the driving surface is further narrowed by up to one foot in each direction due to difficulty in snow plowing, along with blowing and drifting snow."

Miklejn's affidavit includes language from the publication entitled Policy on Geometric Design of Highways and Streets, 1990, by the American Association of State Highway and Transportation Officials (AASHTO), known as the "Green Book". According to Miklejn, the Green Book contains design practices in universal use as the standard for highway geometric design. The section dealing with urban arterials reads: "Lane widths may vary from 10' to 12'. The 10' widths are used in highly restricted areas having little or no traffic. The 11' lanes are used quite extensively for urban arterial street designs. The 12' lane widths are most desirable and are generally used in all higher speed, free flowing principal arterials. * * * These lane widths must be used with judgment. If heavy truck traffic is anticipated, an additional 1' in width is desirable."

In his affidavit, Miklejn also quotes from the Manual of Uniform Traffic Control Devices, 1983 of the New York State Department of Transportation, reprinted in 17 NYCRR chapter V. This standard reference book contains guidelines on the visible features and functioning of traffic control devices such as signage, traffic signals and pavement markings. It contains the following language: "[T]ravel lane width defined by pavement markings should normally be twelve or more feet. * * * The number of lanes on either side of the center line depends on the available pavement width and traffic characteristics." (17 NYCRR 262.4 [a] [6]; [c] [1].) According to Miklejn, Buffalo Avenue was designated as a truck route based "on these two respected sources" and, because Buffalo Avenue has a "relatively high, free-flowing traffic volume, [and based upon] its classification as a minor urban arterial and the above average percentage of truck traffic which use it, travel lane widths should be at least 12' and the existing pavement markings for one lane in each direction are correct." Again referring to the above traffic authorities, Miklejn states that striping for four

lanes, with two in each direction, would result in substandard and inadequate lane widths and compromise motorists' safety.

In response to that factual recital, plaintiff submitted the affidavit of Dr. Satish Mohan, an Associate Professor in the Department of Engineering at the State University of Buffalo. Interestingly, he also relies on the Green Book. According to Dr. Mohan, Buffalo Avenue in the vicinity of the accident "should have been treated and painted as a four-lane (two lanes in each direction) roadway." He concludes that, if appropriate lane markings had been in place, Kratzer "would have made a right turn from the right-hand lane which would have effectively precluded any attempt by the Plaintiff from attempting to pass the KRATZER vehicle on the right." That speculation is not entitled to the weight of an opinion, or, for that matter, any weight whatsoever. "[B]ald conclusory assertions, even if believable, are not enough to defeat a motion for summary judgment" (*Paltrow v Town of Lewisboro*, 199 AD2d 372, 373).

Even were we to accept Dr. Mohan's conjecture as an admissible opinion, we would conclude that it is insufficient to defeat the City's motion. Plaintiff would have offered nothing more "than a mere choice between conflicting opinions" (*Weiss v Fote*, 7 NY2d 579, 588, *rearg denied* 8 NY2d 934). The rule established in *Weiss v Fote* requires more than proof that alternative methods exist.

Municipalities have a "qualified immunity from liability for highway planning decisions" (*Green v County of Niagara*, 184 AD2d 1044; *see, Friedman v State of New York*, 67 NY2d 271, 283). In order to hold a municipality liable with respect to the planning and design of its streets, the plaintiff must show that a street plan was evolved without adequate study or lacked a reasonable basis (*see, Gutelle v City of New York*, 55 NY2d 794, 795; *Weiss v Fote, supra,* at 588-589).

"In the area of highway safety, at least, it has long been the settled view, and an eminently justifiable one, that courts should not be permitted to review determinations of governmental planning bodies under the guise of allowing them to be challenged in negligence suits; something more than a mere choice between conflicting opinions of experts is required before the State or one of its subdivisions may be charged with a failure to discharge its duty to plan highways for the safety of the traveling public" (*Weiss v Fote, supra,* at 588).

Further, even if plaintiff had satisfied his burden in response to the City's motion (*see, Alvarez v Prospect Hosp.*, 68 NY2d 320, 324), it would be of no consequence in view of the fact that

any failure on the part of the City was not a proximate cause of plaintiff's injuries. The injuries resulted from plaintiff's attempt to pass the tractor-trailer on the right as it was turning into a driveway. The City's decision to establish Buffalo Avenue as a truck route with a broad driving lane in each direction can hardly be regarded as being causally related to plaintiff's injuries. We conclude as a matter of law upon the uncontroverted facts that plaintiff's own conduct was the proximate cause, at least with respect to the City, of plaintiff's injuries (*see, Howard v Poseidon Pools*, 72 NY2d 972, 974-975; *Smith v Stark*, 67 NY2d 693, 694), and we see no purpose in deferring this conclusion until further depositions are held (*see, Prado v Bowne & Sons*, 207 AD2d 875, 876; *Williams v Village of Endicott*, 202 AD2d 885, 886).

All concur except Hayes and Fallon, JJ., who dissent and vote to affirm in the following Memorandum.

Hayes and Fallon, JJ. (dissenting). In our view, Supreme Court properly denied the motion of defendant City of Niagara Falls (City) for summary judgment, and we therefore respectfully dissent. The motion was premature because there were outstanding discovery matters (*see, Groves v Land's End Hous. Co.*, 80 NY2d 978, 980; *Parkoff v General Tel. & Elecs. Corp.*, 53 NY2d 412, 417, *rearg denied* 54 NY2d 832; *see also,* CPLR 3212 [f]). In fact, the only deposition that had been taken was that of plaintiff.

Additionally, we conclude that the City failed to sustain its burden in the first instance. The City predicated its motion on the affidavit of its Traffic Planner in the City's Public Works/ Traffic Engineering Department. That affidavit, however, is devoid of any reference to the qualifications, skill, training, knowledge or experience of the affiant. Thus, there is no way to assure that the opinion provided is reliable (*see, Daum v Auburn Mem. Hosp.*, 198 AD2d 899; *see also, LaMarque v North Shore Univ. Hosp.*, 227 AD2d 594). In opposition to the City's motion, plaintiff submitted an affidavit of an expert whose credentials were provided and who reached a different conclusion on the evolution of the highway on which plaintiff's injuries were sustained. We conclude that there were genuine issues of material fact that precluded summary judgment (*see, Temple v Chenango County*, 228 AD2d 938, 939; *Appelbaum v County of Sullivan*, 222 AD2d 987, 989-990). (Appeal from Order of Supreme Court, Niagara County, Fahey, J.—Summary Judgment.) Present—Denman, P. J., Hayes, Balio, Boehm and Fallon, JJ.