■ JAMES GROVER, Appellant, v STATE OF NEW YORK, Respondent. [742 NYS2d 413] —Lahtinen, J. Appeal from a judgment of the Court of Claims (Midey, Jr., J.), entered January 24, 2001, upon a decision of the court following a bifurcated trial in favor of the State on the issue of liability.

On December 29, 1996, claimant tripped while walking across State Route 13 in the City of Ithaca, Tompkins County, and fractured his right elbow and left knee. The portion of Route 13 where claimant crossed was under construction as part of a state highway reconstruction project, was marked with signs and construction barrels and had not yet been repaved. Claimant commenced this action alleging that the State negligently and carelessly breached its duty to protect pedestrians by failing to warn them of a dangerous condition on the roadway and by negligently and carelessly constructing, designing and maintaining this roadway. The essence of his claim was that his fall was caused by a two-inch high hump or ridge in one lane of this three lane road, which constituted a dangerous nuisance or trap for which the State was liable.

Claimant, who has an artificial right leg as a result of a previous accident, testified at trial that he was walking across Route 13 at a point near its intersection with Seneca Street headed to a store on the other side of Route 13 when he tripped and fell. As he got up, he noticed for the first time a "couple of large humps of concrete sticking up" from the road surface. He described the hump where he fell as an incline about two or three inches high and estimated the length of the slope from the bottom to the top on each side of the hump to be about $1\frac{1}{2}$ to 2 feet. Claimant's expert engineer, Kevin O'Connor, testified[1] that the hump resulted from "rutting"[2] in the road surface and that he measured the depth of the ruts in the area of the road where claimant fell to be $1\frac{3}{4}$ to 2 inches deep on one side

1. O'Connor's trial testimony was videotaped prior to trial.

2. Both sides' experts describe "rutting" as a road deformity caused by the wheels of vehicles using that road which causes a displacement or "squishing" of the road asphalt.

of the hump and about 3½ inches deep on the other side. Experts for both sides opined that the hump had developed over a period of time due to the effect of traffic on the road surface.

The Court of Claims found that the "rutting" condition of the roadway which caused the hump had been present for a considerable period of time and determined that "the difference in elevation in the roadway cannot be considered a dangerous condition sufficient to establish negligence against the State." That court also determined that claimant failed to show deficiencies in the State's highway safety plan for this construction project for which liability could be imposed on the State. Claimant now appeals and we affirm.

Generally, in a nonjury case, we have authority "to independently weigh the relative probative force of conflicting inferences that may be drawn from the testimony presented" (*Sullivan v State of New York*, 276 AD2d 989, 990). However, we "accord considerable deference to the findings of the Court of Claims" (*Zecca v State of New York*, 247 AD2d 776, 778) regarding the elevation differences of the roadway, which are based on the court's assessment of the witnesses' testimony presented at trial (*see, Vachon v State of New York*, 286 AD2d 528, 530).

In a pedestrian trip and fall, where liability is premised on the alleged dangerous condition or defect in the walkway surface, "there is no 'minimal dimension test' or per se rule that a defect must be of a certain minimum height or depth in order to be actionable" (*Trincere v County of Suffolk*, 90 NY2d 976, 977). A liability determination depends on the facts and circumstances of each case "including the width, depth, elevation, irregularity and appearance of the defect along with the 'time, place and circumstance' of the injury" (*id.* at 978, quoting *Caldwell v Village of Is. Park*, 304 NY 268, 274). Here, the facts and circumstances established by the trial proof fully support the Court of Claims' determination that this allegedly dangerous defect was not actionable (*see, Maloid v New York State Elec. & Gas Corp.*, 257 AD2d 712; *see also, Sullivan v State of New York, supra; Burstein v City of New York*, 259 AD2d 579).[3]

Moreover, while academic in light of our finding above, we also agree with the Court of Claims' determination that the State's highway safety plan for this project had a reasonable basis (*see, Weiss v Fote*, 7 NY2d 579, 589). Claimant failed to

---

**3.** Contrary to claimant's argument, there was no proof in the record that there was any edge to the hump which could pose a tripping hazard (*see, Argenio v Metropolitan Transp. Auth.*, 277 AD2d 165).

refute the testimony of the State's expert that the warnings in this construction area were adequate and met the applicable requirements of the State Manual for Uniform Traffic Control Devices (*see*, 17 NYCRR ch V; *Zecca v State of New York*, *supra* at 778; *see also*, *Light v State of New York*, 250 AD2d 988, *lv denied* 92 NY2d 807).

Mercure, J.P., Crew III, Peters and Spain, JJ., concur. Ordered that the judgment is affirmed, without costs.