In the Matter of AETNA CASUALTY & SURETY COMPANY, Appellant, v ANGELINA BARILE, as Administratrix of the Estate of ANTHONY BARILE, Deceased, Respondent.

First Department, May 11, 1982

**APPEARANCES OF COUNSEL**

*Michael Majewski* of counsel (*Joseph D. Ahearn* with him on the brief; *J. Robert Morris,* attorney), for appellant.

*Vernon J. Welsh* of counsel (*Chasin Levine & Ross,* attorneys), for respondent.

**OPINION OF THE COURT**

BLOOM, J.

This case poses a single and narrow issue; whether the testimony of respondent's expert in the circumstances here indicated was so speculative that it failed to present an issue determinable by the trier of the fact. We hold that it was. Accordingly, we reverse and grant the motion to stay arbitration.

The record discloses that sometime prior to 4:45 A.M. on the morning of May 9, 1980, Anthony Barile, the respondent's intestate, was traveling west on Route 52 in the Town of Shawangunk, Ulster County, New York. He was alone in the vehicle and the highway was a two lane highway, one lane for traffic moving in each direction. At the point of impact there was a wide right hand sweep in the road, with trees lining the southerly side.

At or about 5:00 A.M. Henry Brylowski was traveling east on Route 52, in the direction opposite to the direction in which Barile had been moving. As he entered the curve in the road, he observed the Barile vehicle, at rest, across his path, its front demolished and jammed into a clump of trees with the remainder of the vehicle perpendicularly astride the eastbound lane of the highway. Because Brylowski's room for movement was limited his right front fender struck the right rear of the Barile car.

State Trooper Miszlo was the first official to arrive at the scene. Barile was taken to Horton Memorial Hospital in Middletown where he died at 5:15 P.M. the same day. Miszlo filed two separate accident reports. The first covered his version of the manner in which the Barile car came to strike the tree "head on". The second covered the striking of the Barile vehicle by Brylowski.

Petitioner was the insurer of the Barile automobile. On November 17, 1980, the attorney for respondent, the mother and administratrix of the deceased, served a demand for arbitration upon petitioner, under the uninsured motorist indorsement to the policy, claiming that the accident which had caused the death of Anthony Barile was precipitated by a "hit-and-run" driver. Petitioner moved to stay arbitration. Special Term granted the motion to the extent only of setting the issue of whether there had been any contact between the Barile car and the alleged "hit-and-run" vehicle prior to the accident down for trial.

At the trial respondent produced two witnesses; the deceased's brother, who testified that he used the 1974 Pontiac on numerous occasions prior to the accident and that it was in good working order, and an expert. The expert, whose qualifications as a consulting safety engineer were uncontested by the petitioner, testified that he

had visited the scene of the accident approximately a year subsequent to the accident and had reviewed the police reports and the photographs taken by the police. He stated that he had not been able to examine the vehicle since it was no longer available for inspection. Based on his review of the reports, his viewing of the photographs, which showed only two areas of damage on the left side of the car — damage to the left front between the front of the car and the door and damage to the left rear and left side rear — he concluded that the 1974 Pontiac had been struck in the left rear by an unidentified vehicle which then left the scene. He further testified that this caused the Barile car "to rotate and veer sharply, perhaps at a forty-five degree angle * * * Once it hit the set of trees, the car rotated causing damage on the right side of the car * * * where the damage goes from the front of the automobile to the back of the automobile * * * So based on that, and based on the photographs, my inspection, it is clear to me that the car was impacted by another car, causing it to veer off the road".

"It is settled and unquestioned law that opinion evidence must be based on facts in the record or personally known to the witness" (*Cassano v Hagstrom,* 5 NY2d 643, 646). "While it is true that in many cases the cause or effect of a physical injury can be proved in no other way than by the opinions of experts specially qualified by experience and study, it is equally true that such opinions, to be of any value, must be based upon facts in evidence, and either known to the witness or assumed to be true" (*Marx v Ontario Beach Hotel & Amusement Co.,* 211 NY 33, 39; see, also, *Weibert v Hanan,* 202 NY 328, 331; *Mohr v Long Is. Light. Co.,* 51 AD2d 1053; *Cross v Board of Educ.,* 49 AD2d 67, 70). That is not to say that an expert may not offer an opinion unless he has personally viewed the items on which he bases that opinion. It is only to say that he may not speculate, he may not guess. His opinion must be supported either by facts disclosed by the evidence or by facts known to him personally (*Cross v Board of Educ.,* 49 AD2d 67, 70, *supra; Rodolitz v Boston-Old Colony Ins. Co.,* 74 AD2d 821). Indeed, his testimony may be based on photographs taken immediately after the event (*Gary v*

*Country Club Acres,* 47 AD2d 788). What is essential is that the facts upon which the opinion is based be established or "fairly inferable" from the evidence (*Tarlowe v Metropolitan Ski Slopes,* 28 NY2d 410, 414; *Cross v Board of Educ.,* 49 AD2d 67, 70, *supra*).

With this statement of the law as our linchpin, we confront the opinion of the expert and the factual basis therefor. There is no direct evidence of contact on the date in question prior to the contact of the Brylowski truck with the right rear of the Barile car. To begin with, the expert testified that the photographs on which he based his opinion were not "the best photographs in the world".[1] He conceded that when first he went over the photographs he informed counsel for respondent that "it looks like there is damage from the front to the door and it does not look particularly damaged from the door to the rear."[2]

Secondly, the road did not give indication of skid marks. If the Barile automobile were struck in the rear by another vehicle, causing it to swerve so sharply to the left that it came into contact with the trees on the opposite side of the road there necessarily would be skid marks indicating the rotation of the car. Yet, all parties are in agreement that there were no such marks. The only response of the expert was that "[m]aybe the skid marks were not possible to be taken on that roadway". Yet it is undisputed that the weather was clear and dry and the roadway is described as curved with a level roadway surface.

Finally, if decedent's automobile had been struck in the left rear and the vehicle had then veered to the left, it is almost impossible to conceive of a situation in which the left side of the Barile car would not have been virtually demolished by the impact of the striking vehicle hitting it amidships. Yet the testimony of the expert is that the major damage to the deceased's automobile was on the right side.

---

1. Examination of the photographs demonstrates that this characterization was a masterful understatement. They are so dark in color that it is difficult to make out anything other than a demolished front, a shattered roof and the general demolition of the car. Indeed, the police report indicated that the automobile had been "totaled".

2. This characterization by respondent's expert was in line with the general theory of petitioner that Barile had lost control of the car, had crossed the road and had rammed into the trees, head on.

In these circumstances we cannot help but reach the conclusion that the expert's testimony as to the manner in which the accident occurred was wholly speculative and was tailored to meet a desired result.

Accordingly, the order and judgment of the Supreme Court, New York County (KIRSCHENBAUM, J.), entered January 27, 1982 should be reversed, on the law and on the facts, and the application to stay arbitration is granted, without costs. In light of this disposition and the stipulation conditionally consenting to a stay of arbitration pending disposition of this appeal, which conditions have been complied with, the motion for an interim stay pending appeal (Motion No. 1218) is dismissed as moot.

ROSS, J. P., MARKEWICH, SILVERMAN and ASCH, JJ., concur.

Order and judgment (one paper) of the Supreme Court, New York County, entered on or about January 27, 1982, unanimously reversed, on the law and on the facts, and the application to stay arbitration is granted, without costs and without disbursements.