■ MAELEEN ARCE et al., Appellants-Respondents, v NEW YORK CITY HOUSING AUTHORITY, Respondent-Appellant. [696 NYS2d 67] —In an action to recover damages for personal injuries, etc., (1) the plaintiffs appeal, by permission, from an order of the Supreme Court, Queens County (Dye, J.), dated May 19, 1998, which, *sua sponte,* set aside a verdict in their favor in the principal sum of $925,000 as excessive and ordered a new trial thereon unless they consented to reduce the verdict to $125,000, and (2) the defendant appeals, as limited by its

brief, from so much of an interlocutory judgment of the same court, entered July 22, 1998, as, upon the denial of the defendant's application to set aside the verdict and the plaintiffs' refusal to consent to reduce the verdict, is in favor of the infant plaintiff and against it on the issue of liability.

Ordered that the interlocutory judgment is reversed insofar as appealed from, on the law, and the complaint is dismissed, and it is further,

Ordered that the appeal from the order is dismissed as academic; and it is further,

Ordered that the defendant is awarded one bill of costs.

On this record, there is no rational process by which the trier of fact could have found in favor of the plaintiffs (*see, Dooley v Skodneck,* 138 AD2d 102; *see also, Vigilant Ins. Co. v Rippner Elec. Constr. Corp.,* 196 AD2d 494, 496; *Jimenez v Urban Universal Structures,* 174 AD2d 604, 605).

" 'It is settled and unquestioned law that opinion evidence must be based on facts in the record or personally known to the witness' " (*Matter of Aetna Cas. & Sur. Co. v Barile,* 86 AD2d 362, 364, quoting *Cassano v Hagstrom,* 5 NY2d 643, 646). An expert may not speculate and may not guess (*see, Matter of Aetna Cas. & Sur. Co. v Barile, supra*). Here, the testimony ·of the plaintiffs' expert witness as to the infant plaintiff's purported elevated blood lead level was equivocal at best and, at the very least, speculative. The expert never examined the infant plaintiff and was uncertain as to whether the blood test which resulted in the initially high reading was the admittedly unreliable "micro finger-stick" test.

Moreover, it was undisputed that a blood test administered only 11 days after the first test indicated a normal blood lead level of three micrograms per deciliter, and all of the experts agreed that a dramatic drop was unlikely, if not impossible, over such a short period of time. Moreover, all subsequent blood tests results (which the plaintiffs' expert had no reason to believe were not the result of the more accurate venous tests), indicated that the infant plaintiff's blood lead levels remained normal.

In light of the foregoing, we need not reach the contentions raised as to the issue of damages. Ritter, J. P., Thompson, Feuerstein and Smith, JJ., concur.