■ JUAN SANTIAGO, Respondent, v NEW YORK CITY TRANSIT AUTHORITY, Appellant. [706 NYS2d 721] —In an action to recover damages for personal injuries, the defendant appeals from a judgment of the Supreme Court, Kings County (Rosenberg, J.), entered March 11, 1999, which, upon a jury verdict finding it 60% at fault in the happening of the accident and the plaintiff 40% at fault, awarded the plaintiff damages.

Ordered that the judgment is reversed, on the law, and a new trial is granted, with costs to abide the event.

The plaintiff suffered a traumatic amputation of his legs when he was struck by a subway train in the Prospect Avenue station in Brooklyn. He subsequently commenced this action against the New York City Transit Authority. According to the testimony at trial, the plaintiff, who suffered from, *inter alia,* depression, was lying on his back in a trough between the tracks. The train operator testified that the train entered the station traveling at approximately 30 miles per hour and he put the train into coast mode. The tracks leading into the station were straight, but there was a slight incline which impaired visibility of the tracks. His view of the trough was also obscured by the railroad ties which ran across the trough. The train operator first saw the plaintiff, who was wearing dark clothing, when the train was approximately one car length, or 75 feet, into the station, as the plaintiff moved his legs over the tracks. The train operator immediately placed the controller, the device with which he operated the train, into the emergency braking position. By the time the train came to a stop, a portion of the first car had run over the plaintiff.

The train was equipped with a so-called "deadman's feature" which is intended to stop the train in the event of the incapacitation or death of the train operator. The brake is engaged when the operator stops applying 15 pounds of pres-

sure to the controller. Train operators are instructed to move the controller into the emergency braking position in case of an emergency. The "deadman's feature" is a secondary brake.

The plaintiff's expert testified that, in his opinion, 15 miles per hour was a reasonable and safe speed for a train entering a station. He also testified that a reasonable time within which a train operator should react to an emergency is a half second. In addition, the "deadman's feature", rather than the emergency brake, should have been utilized in this case because a train would stop more quickly if the former were used. Thus, the expert concluded that the accident could have been avoided if the train had been traveling at a slower rate of speed and if the train operator had used the "deadman's feature" and reacted faster, given the fact that he had a straight view of the station.

The defendant's witnesses testified that there was no speed restriction for a train entering the Prospect Avenue station and that 25 to 35 miles per hour was a reasonable rate of speed at which to enter the station. According to one of the witnesses, there was no custom or practice to enter a station at 15 miles per hour, as such a practice "would slow up the whole railroad".

The jury found both parties negligent and apportioned the defendant's liability at 60% and the plaintiff's at 40%. On appeal, the defendant contends that the opinions of the plaintiff's expert were inadmissible on several grounds.

It was not error for the trial court to allow the plaintiff's expert to testify that the train should have entered the station at 15 miles per hour. Contrary to the defendant's contention, its decision to permit trains to enter at a higher speed is not subject to qualified immunity. A municipality is entitled to qualified immunity where a governmental planning body "has entertained and passed on the very same question of risk as would ordinarily go to the jury" (*Weiss v Fote*, 7 NY2d 579, 588). "Lawfully authorized planning by governmental bodies has a unique character deserving of special treatment as regards the extent to which it may give rise to tort liability * * * To accept a jury's verdict as to the reasonableness and safety of a plan of governmental services and prefer it over the judgment of the governmental body which originally considered and passed on the matter would be to obstruct normal governmental operations and to place in inexpert hands what the Legislature has seen fit to entrust to experts" (*Weiss v Fote, supra*, at 585-586). Under the doctrine of qualified immunity, a municipality may be held liable only if a duly-executed plan was adopted without an adequate study or rea-

sonable basis (see, Friedman v State of New York, 67 NY2d 271, 284; Weiss v Fote, supra, at 589).

There is no evidence in the record that the defendant conducted a study, considered and passed upon the matter, or adopted a plan regarding the appropriate speed for a train entering a station. Therefore, based on the record before us, the doctrine of qualified immunity is not applicable (cf., Weiss v Fote, supra; Monfiston v Ekelman, 248 AD2d 518; Tully v Town of N. Hempstead, 210 AD2d 217). The defendant's contention that the doctrine is also applicable to the decision to use the emergency brake rather than the "deadman's feature" in emergency situations is unpreserved for appellate review. In any event, the record is also deficient with regard to any study or plan underlying that decision.

The expert, however, should not have been permitted to testify that the train operator should have seen the plaintiff sooner than he did and that the train would have stopped more quickly if the "deadman's feature" had been utilized. Opinion evidence must be based on facts in the record or personal knowledge (see, Duran v Nassau County, 267 AD2d 346; Arce v New York City Hous. Auth., 265 AD2d 281). The expert's opinions on those matters were speculative and unsupported by any facts in the record or his personal observations. Thus, reversal is warranted and a new trial is granted.

The defendant's remaining contentions are either unpreserved for appellate review or without merit. Santucci, J. P., Joy, Sullivan and Altman, JJ., concur.