Min Zhong v Matranga (2022 NY Slip Op 05063)

Min Zhong v Matranga

2022 NY Slip Op 05063

Decided on August 30, 2022

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: August 30, 2022

Before: Renwick, J.P., Oing, Moulton, Kennedy, Mendez, JJ. 

Index No. 150823/17 Appeal No. 16078 Case No. 2021-04488 

[*1]Min Zhong, Plaintiff-Respondent,
v
Peter J. Matranga, Defendant-Appellant.

Law Office of Kevin J. Philbin, New York (Arlene E. Lewis of counsel), for appellant.
Pollack, Pollack, Isaac & DeCicco LLP, New York (Joshua Block of counsel), for respondent.

Order, Supreme Court, New York County (Alexander Tisch, J.), entered on or about October 27, 2021, which denied defendant's motion for summary judgment dismissing the complaint, reversed, on the law, without costs, the motion granted, and the complaint dismissed. The Clerk is directed to enter judgment accordingly.
Plaintiff commenced this action to recover for personal injuries she sustained when defendant, who was riding a bicycle within a marked bicycle lane with the light in his favor, collided with her after she suddenly stepped off the curb directly into his path. After completion of discovery, defendant moved for summary judgment dismissing the complaint. The parties submitted, in support of and in opposition to the motion, their deposition testimony, a copy of a video of the intersection that captured the incident, copies of the video stills, expert affidavits and an affidavit by defendant. Supreme Court denied the motion, and we now reverse, as defendant established prima facie entitlement to summary judgment and plaintiff failed to raise an issue of fact.
The video shows that immediately prior to the incident, the traffic light controlling the intersection is red for traffic on First Avenue and green for traffic on East 91st Street. A pedestrian and three bicyclists (other than defendant) are stopped on the southwestern side of the intersection waiting for the traffic light to change. When the light for traffic on First Avenue changes to green, the pedestrian crosses East 91st Street to the northwestern side, comes to the corner, faces the direction of First Avenue as if to go across it, and stops. The three bicyclists stop for the red light on the southwestern side of East 91st Street and First Avenue, accelerate their bicycles from the stopped position, and gradually pick up speed as they approach and pass the northwestern side of the intersection.
The video then shows plaintiff, towing a suitcase on wheels, exiting a building on the northwestern side of East 91st Street and proceeding to its intersection with First Avenue. As plaintiff approaches First Avenue, the other pedestrian, who had already crossed the street, has already reached the northwestern corner and is stopped facing vehicular traffic and a red signal for pedestrians crossing on First Avenue. The pedestrian looks both ways, first looking to the right as defendant, on his own bicycle, enters the screen from the right and is seen approaching the middle of the intersection. The pedestrian then looks to the left as plaintiff, who has just reached the intersection with First Avenue, continues walking at a fast pace, and without stopping or looking to the left or right, steps off the sidewalk and into the bicycle's path, where the collision occurs.
Defendant testified, consistent with the video, that he had the right-of-way and was riding his bicycle under the speed limit. According to the testimony, plaintiff was about 6 to 10 feet in front of defendant when she [*2]stepped off the curb while wheeling a bag. Defendant testified that when plaintiff took two steps into the bicycle lane, he "immediately braked and yelled 'watch out,'" and approximately two seconds later, collided with her in the middle of the bicycle lane. He "didn't have time" to stop, change lanes or go around plaintiff; jamming on the brakes and yelling was "the only thing [he] could do" in the time he had to react.
Plaintiff admitted that she entered the bicycle lane against the red traffic signal for pedestrian traffic. However, the video contradicts her statement that she looked right and left to check for any traffic before stepping off the curb. She stated she did not see any bicycle coming towards her and did not remember defendant's bicycle striking her. She did remember, consistent with defendant's version of the incident, hearing someone yell "watch out" in a voice she described as "very loud and very, very, close . . . almost next to [her] [right] ear."
There is no conflicting evidence regarding defendant's speed as both experts opined that defendant was traveling at a speed of approximately 14 miles per hour.
Defendant's expert performed a site inspection and an analysis of bicycle traffic at the intersection; that inspection revealed that the average speed of the bicyclists riding through the intersection was 13.8 miles per hour with a range of 7.6 to 22.0 miles per hour. The expert opined that defendant was not negligent, as he was proceeding on First Avenue at a calculated speed of 14.1 miles per hour, which was a reasonable speed and well within the 25 mile per hour speed limit. The expert further opined that defendant had the right-of-way and collided with plaintiff when she suddenly stepped off the curb less than ten feet in front of him and into the path of his bicycle, leaving defendant with no time to react or to maneuver to avoid striking her. He also concluded that although defendant applied his brakes and slowed down there was not enough time for him to stop because the distance was too short. Similarly, the expert posited, defendant had no time to make an evasive maneuver without putting himself or other pedestrians at risk. The expert noted that if defendant had made an evasive maneuver to the right, he would have risked colliding with the concrete median or unexpectedly moving into the left most travel lane for vehicular traffic. Likewise, if defendant had made an evasive maneuver to the left, he would have risked colliding with the curb, the light pole, and other pedestrians.
Plaintiff's expert admitted that plaintiff entered the marked bicycle lane against a red light for pedestrian traffic. Nonetheless, he opined even if defendant was traveling under the speed limit, he was still negligent because he was traveling much faster than the three other bicyclists seen in the video. Plaintiff's expert calculated that in the three seconds between defendant's appearance in the video and the impact, his speed was [*3]14.3 miles per hour - much faster than the three other bicyclists, whose speed he calculated at approximately 8 to 10 miles per hour. Plaintiff's expert states in a conclusory manner, "[i]n traveling at an excessive and unreasonable rate of speed compared to the prevailing bicycle traffic, defendant failed to have regard for the actual, or even potential, hazards of New York City pedestrian traffic in violation of Vehicle Traffic Law and § 1180." He further opines in a conclusory manner,
"from the time that plaintiff first entered the bicycle lane, until the time she was struck, there was ample amount of time for the defendant to observe and avoid the pedestrian by slowing down, stopping, or exercising control to maneuver his bicycle to go around her. Had the defendant done any of those things, the collision would not have occurred, or the impact would have been substantially less severe. Not doing so was a failure to exercise due care in violation of NYS [Vehicle and Traffic Law] § 1146(a)."
It is important to note that plaintiff's expert does not state in his affidavit that he performed an analysis of bicycle traffic to determine the average speed of bicyclists riding through the intersection. He reaches his conclusion that defendant was traveling at an excessive rate of speed solely by comparing his speed to that of the three other bicyclists seen in the video, who were accelerating from a stopped position, unlike defendant. However, according to defendant's expert, a bicyclist's speed while decelerating from a stopped position does not reflect the bicyclist's cruising speed. There are no other facts in the record to support plaintiff's expert's conclusions.
Defendant made a prima facie case for summary judgment, as the evidence submitted established that he was not negligent. It is undisputed that the light was red for plaintiff and pedestrians crossing First Avenue at the intersection of East 91st Street and green for moving traffic on First Avenue when plaintiff, without warning and without looking in the direction of oncoming bicycle traffic, walked into the path of defendant's bicycle, leaving defendant unable to avoid striking her (see Rosa v Scheiber, 89 AD3d 827, 827 [2d Dept 2011]; Brown v Muniz, 61 AD3d 526, 527 [1st Dept 2009]; lv denied 13 NY3d 715 [2010]). It is also undisputed that defendant, with the green light in his favor, was riding his bicycle within the marked bicycle lane, almost 11 miles per hour under the posted speed limit of 25 miles per hour, within the average cruising speed for bicycle traffic proceeding through the intersection, and in a prudent, non-negligent manner given the traffic and pedestrian conditions (see Fatumata B. v Pioneer Transp. Corp., 118 AD3d 486, 486 [1st Dept 2014]). Defendant was left with no time to react, stop, or maneuver around plaintiff to avoid striking her when she darted out approximately 6 to 10 feet in front of him. Indeed, although defendant applied the brakes in an attempt to [*4]bring the bicycle to a stop, he struck her less than two seconds after she walked into the middle of the bicycle lane and the path of the moving bicycle (see Pripkhan v Karmon, 140 AD3d 634, 635 [1st Dept 2016]; Ramirez v Molina, 114 AD3d 540, 540 [1st Dept 2014]).
There is only one version of the accident: the one shown in the video, described in defendant's testimony, and corroborated by plaintiff. Plaintiff did not look in the direction of the defendant, could not state the distance between her and defendant when she stepped off the curb, does not remember being struck by the bicycle, and only remembers someone yelling "watch out" while "very, very close" to her right ear. This testimony is consistent with defendant's testimony that she darted out onto the bicycle's path when he was within a few feet from her.
In opposition, plaintiff failed to raise an issue of fact. There is no evidence that defendant operated his bicycle at an excessive rate of speed, in a negligent manner, or without due care to avoid colliding with any pedestrian, in violation of Vehicle and Traffic Law §§ 1180(a), 1146. Plaintiff attempts to raise an issue of fact through her expert, who opines, without any factual basis in the record, and in a conclusory and speculative manner, that defendant operated his bicycle at an excessive speed when compared to the speed of the three other bicyclists, and that in the three seconds (at most) that defendant had to react from the moment he is seen entering the screen, he could have slowed down, stopped, or maneuvered his bicycle to go around plaintiff to avoid the collision, or to make the impact substantially less severe.
Opinion evidence must be based on facts in the record. An expert cannot speculate, guess, or reach their conclusion by assuming material facts not supported by the evidence (Cassano v Hagstrom, 5 NY2d 643, 646 [1959]). The opinion must be supported either by facts disclosed by the evidence or by facts known to the expert personally. It is essential that the facts upon which the opinion is based be established, or fairly inferable, from the evidence (Matter of Aetna Cas. & Sur. Co. v Barile, 86 AD2d 362, 364 [1st Dept 1982]).
The uncontradicted evidence established that defendant was riding his bicycle through the intersection with the right-of-way and in the marked bicycle lane at a cruising speed of approximately 14 miles per hour, well within the posted speed limit and within the average cruising speed for bicycle traffic proceeding through the intersection. Plaintiff suddenly, unexpectedly, and without looking in the direction of oncoming bicycle traffic, entered the marked bicycle lane against a red light for pedestrian traffic and within a few feet of defendant. The uncontradicted evidence establishes that defendant was not negligent, but that plaintiff was negligent and that her negligence was the sole proximate cause of the collision and her injuries.
All concur [*5]except Oing, J. and Moulton, J., who
dissent in a memorandum by Moulton J., as follows:
MOULTON, J., dissenting,
I respectfully dissent.
Plaintiff was injured when she stepped off the curb at the northwest intersection of 91st Street and First Avenue in Manhattan and was struck by defendant riding his bicycle in the designated bike path. Neither party disputes that defendant had the right-of-way.
Defendant failed to demonstrate as a matter of law that he obeyed his duty to exercise due care in looking out for pedestrians and maintaining a safe rate of speed (Vehicle and Traffic Law §§ 1146[a]; 1180). The stills from the video of the accident relied upon by defendant do not definitively establish that his bicycle was midway through the intersection when he first noticed plaintiff, or that plaintiff was less than 10 feet away from him when she stepped into the marked bicycle lane.
Even had defendant made out his prima facie case, issues of fact preclude summary judgment. Although defendant had the right-of-way, he still had a duty to "use reasonable care . . . to avoid placing himself . . . into a dangerous position" (Felix v Polakoff, 178 AD3d 561, 563 [1st Dept 2019] ["Pursuant to Vehicle and Traffic Law § 1231, a person riding a bicycle on a roadway has the same rights and responsibilities as a driver of a motor vehicle"]) and to avoid colliding with plaintiff in the bicycle lane (Vehicle and Traffic Law § 1146[a]; see Sylvester v Velez, 146 AD3d 599 [1st Dept 2017] [even though the plaintiff pedestrian conceded he lacked right-of-way when crossing, triable issues of fact existed as to whether the defendant could have exercised due care to avoid accident]; Tapia v Royal Tours Serv., Inc., 67 AD3d 894, 895-896 [2d Dept 2009] [driver with right-of-way has duty to use reasonable care to avoid collision]; Nevarez v S.R.M. Mgt. Corp., 58 AD3d 295, 298 [1st Dept 2008] ["conflicting versions of the accident" raised issues of fact as to whether vehicle operator "failed to use reasonable care to avoid the collision"]; see also Rojas v Solis, 154 AD3d 985, 986 [2nd Dept 2017] [even where the plaintiff bicyclist rode the wrong way on a one-way street in violation of Vehicle and Traffic Law § 1234[a], issue of fact remained as to whether the defendant motorist that struck the bicycle "failed to see what was there to be seen by the proper use of his senses"). The record presents issues as to whether defendant exercised that care. Contrary to defendant's assertion, plaintiff testified that she looked both ways before stepping off of the curb. Her alleged failure to see defendant could indicate that defendant's rate of speed was excessive.
The record presents conflicting evidence on how fast defendant was traveling, as the video of the accident shows that defendant was at least keeping pace with an MTA bus to his right (see Nevarez, 58 AD3d at 297-298 [summary judgment inappropriate when conflicting testimony raised outstanding issues of fact[*6]]). The parties' experts agreed that defendant was travelling faster than the other bicyclists depicted in the video — a comparison that the finder of fact could find probative concerning the safe rate of speed (see Bell v Angah, 146 AD3d 734, 734 [1st Dept 2017] [the defendant driver's observation that the plaintiff cyclist was riding his bicycle "very fast raised factual issues as to [the] plaintiff's potential comparative negligence" as "[a]n accident may have more than one proximate cause"]; Rodriguez v CMB Collision Inc., 112 AD3d 473, 473 [1st Dept 2013]).
The majority emphasizes that even if defendant was riding faster than the other bicycles in the video, he was proceeding well under the speed limit of 25 miles an hour. However, speed alone is not dispositive. Indeed, our precedent instructs that the appropriate inquiry is whether a vehicle operator's "speed was reasonable under the circumstances" (DeJesus v Alba, 63 AD3d 460, 464 [1st Dept 2014] [emphasis added]; see e.g. Miller v DeSouza, 165 AD3d 550, 550 [1st Dept 2018] ["A driver is supposed to make reasonable use of his or her senses, . . . [and] drive at a safe rate of speed under existing conditions"]).
The analysis of the majority depends on sifting and weighing the relevant facts. For example, the majority concludes that "[j]amming on the brakes and yelling was the only thing [defendant] could do in the time he had to react"; however, conflicting expert testimony on this question creates an issue of triable fact. It is not our job to find the facts. Rather it is the jury that is charged with evaluating the facts to determine whether defendant's speed was "reasonable and prudent under the conditions" and whether defendant acted with due "regard to the actual and potential hazards" one may encounter while operating a bicycle on a New York City street (Vehicle and Traffic Law § 1180[a]; see Ferrer v Harris, 55 NY2d 285, 292 [1982] [question of whether driver's speed of 15-20 miles per hour in an area with a posted speed limit of 30 miles per hour was reasonable under the circumstances was properly left to jury to decide]).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: August 30, 2022