| |
|---|
| **Washington v New York City Tr. Auth.** |
| 2024 NY Slip Op 32235(U) |
| July 3, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 151633/2023 |
| Judge: Richard Tsai |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | |
|---|---|
| **PRESENT:** <u>HON. RICHARD TSAI</u> | **PART** 21 |
| *Justice* | |

--------------------------------------------------------------------------X

SHARE WASHINGTON,

                       Plaintiff,

              - v -

NEW YORK CITY TRANSIT AUTHORITY, ANITA ADAMS,
ISAIAH ADAMS and DESIREE TAPIA,

                       Defendants.

--------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | <u>151633/2023</u> |
| **MOTION DATE** | <u>06/29/2023</u> |
| **MOTION SEQ. NO.** | <u>001</u> |

## DECISION + ORDER ON MOTION

The following e-filed documents, listed by NYSCEF document number (Motion 001) 12-46 and 50-51
were read on this motion to/for        <u>       JUDGMENT - SUMMARY       </u>.

      This action involves a motor vehicle collision between a bus and another vehicle which allegedly occurred on April 28, 2022, on Lenox Avenue, between 120th Street and 119th Street in Manhattan. The bus was allegedly operated by defendant Desiree Tapia and allegedly owned by defendants MTA Bus Company, Manhattan and Bronx Surface Transit Operating Authority, Metropolitan Transportation Authority and New York City Transit Authority (collectively, Transit Defendants). The other vehicle was allegedly owned by defendant Anita Adams and operated by defendant Isaiah Adams (Car Defendants). Plaintiff Share Washington was a bus passenger.

      Plaintiff now moves for summary judgment on the issue of liability in plaintiff's favor against all defendants. The Car Defendants oppose plaintiff's motion. The Transit Defendants also oppose plaintiff's motion and cross-move for summary judgment dismissing plaintiff's complaint and dismissing the Car Defendants' cross-claims against them, based on the emergency doctrine. The Car Defendants oppose the Transit Defendants' cross motion, but plaintiff does not.

## BACKGROUND

      In an affidavit, Desiree Tapia avers that she is "currently employed as a Bus Operator by Manhattan and Bronx Surface Transit Operating Authority ('MABSTOA')," since October 2021 (Transit Defendants' Exhibit F [NYSECF Doc. No 33] Tapia Affidavit ¶ 1).

      Tapia admits that, on April 28, 2022, she was "operating bus 5821" on the "M101 route" "when an accident occurred at approximately 11:17 a.m. on Lenox Avenue between 120th Street and 119th Street" (*id.* ¶ 2). According to Tapia, Lenox Avenue is "a two-way street with two lanes for moving traffic" (*id.* ¶ 3), and she was operating the bus

"in the right lane and did not depart from the right lane at any time immediately before the accident or during the accident" (*id.* ¶ 3).

According to Tapia, as she was driving south bound "in the right-hand lane, a white BMW that was in the left-hand lane suddenly cut in front of the bus, from left to right, and the white BMW struck the left front of the bus" (*id.* ¶ 4). Tapia states that the "speed of the bus was within the speed limit of 25 MPH during the entire occurrence" (*id.* ¶ 4).

In an unsworn accident report dated April 28, 2022, defendant Tapia wrote, "I was going south bound on Lenox Avenue and 119th on my right hand side when a white BMW (ZWF.84G) cut in front of me hitting the front side of the bus" (Transit Defendants' Exhibit G [NYSECF Doc. No 33], Accident Reports at 1-2).

## DISCUSSION

"On a motion for summary judgment, the moving party must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact. If the moving party produces the required evidence, the burden shifts to the nonmoving party to establish the existence of material issues of fact which require a trial of the action"

(*Xiang Fu He v Troon Mgt., Inc.*, 34 NY3d 167, 175 [2019] [internal citations and quotation marks omitted]). On a motion for summary judgment, "facts must be viewed in the light most favorable to the non-moving party" (*Vega v Restani Const. Corp.,* 18 NY3d 499, 503 [2012] [internal quotation marks omitted]).

**I. Plaintiff's Motion for Summary Judgment in her favor against all defendants**

According to plaintiff,

"Defendant Isaiah Adams was driving a vehicle owned by Defendant Anita Adams, also going southbound on Lenox Avenue. In operating the motor vehicle, Defendant Isaiah Adams performed an unsafe lane change and collided with the bus I was on, operated by Defendant Desiree Tapia, in front of 187 Lenox Avenue"

(Washington aff ¶¶ 4-6).

In opposition, the Car Defendants argue that Isaiah Adams, the driver of the other vehicle, was faced with an emergency situation (affirmation of Car Defendants' counsel in opposition ¶¶ 12-18 [NYSCEF Doc. No. 39]). They also argue that summary judgment is premature (*id.* ¶¶ 22-28).

**151633/2023   WASHINGTON, SHARE vs. NEW YORK CITY TRANSIT AUTHORITY ET AL**          **Page 2 of 9**
**Motion No.  001**

2 of 9

[* 2]

In reply, plaintiff argues that plaintiff's affidavit was sufficient to meet plaintiff's prima facie burden, and for the first time in reply, plaintiff submits an uncertified copy of a police accident report MV-104AN (plaintiff's Exhibit A [NYSCEF Doc. No. 44]).  For the first time in reply, plaintiff also asserts that the serious injury threshold was met, and plaintiff submits two operative reports from surgeries performed to plaintiff's left and right shoulders (*see* plaintiff's Exhibits B and C [NYSCEF Doc. Nos. 45-46).

Plaintiff's motion for summary judgment is denied.  Contrary to plaintiff's argument, plaintiff's affidavit was not sufficient to meet her prima facie burden of summary judgment establishing that Isaiah Adams had made an unsafe lane change, because the affidavit is conclusory. The accident report cannot be considered, for "a movant may not use reply papers 'to remedy ... basic deficiencies in [their] prima facie showing'" (*Tribbs v 326-338 E 100th LLC*, 215 AD3d 480, 481 [1st Dept 2023] [citation omitted]).  Similarly, plaintiff's medical records were improperly submitted for the first time in reply (*see Liparulo v New York City Health & Hosps. Corp.*, 193 AD3d 593 [1st Dept 2021], *lv dismissed* 37 NY3d 1088 [2021]).  Lastly, plaintiff's affidavit sets forth no facts from which the court could reasonably infer that defendant Tapia operated the bus negligently.

Plaintiff's failure to make the prima facie showing "requires denial of the motion, regardless of the sufficiency of the opposing papers" (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]).[1]

## II. The Transit Defendants' Cross Motion for Summary Judgment

In support of their cross motion, the Transit Defendants argue that the bus operator was faced with an emergency, relying upon Tapia's affidavit, the unsworn accident reports, and video footage from the bus.[2]

---

[1] The court cannot consider the submissions in the Transit Defendants' cross motion for summary judgment to cure the deficiencies of plaintiff's motion for summary judgment. First, plaintiff did not adopt or incorporate by reference the submissions of the Transit Defendants' cross motion as part of plaintiff's own motion.  Second, the Transit Defendants' cross motion was served on the same day that the Car Defendants had already served their opposition to plaintiff's motion.  Thus, the Car Defendants would not have been on notice that the video footage could be considered as evidence of the Car Defendants' negligence in support of plaintiff's motion.  Third, CPLR 3212 (b), which permits a court to search the record to grant summary judgment to a nonmoving party, is not applicable here, as plaintiff was a moving party.

[2] The Transit Defendants originally submitted the video footage on a CD and DVD to the court on 4/16/24 and 4/22/24, respectively, but the video footage was not playable.  On 5/22/24, Transit Defendants provided the court and the opposing parties with a link to "Kiteworks (the Transit Defendants' virtual file sharing program) to download the video footage.

The court was able to download and view a file named: "220428-5821-1120-00000.NH16.avs," which is the identical name of the file referenced in the affidavits of those who retrieved the video footage and created the CD (*see* Transit Defendant's Exhibits D and E [NYSCEF Doc.

**151633/2023   WASHINGTON, SHARE vs. NEW YORK CITY TRANSIT AUTHORITY ET AL**        Page 3 of 9
**Motion No.  001**

3 of 9

[* 3]

The emergency doctrine

"recognizes that when an actor is faced with a sudden and unexpected circumstance which leaves little or no time for thought, deliberation or consideration, or causes the actor to be reasonably so disturbed that the actor must make a speedy decision without weighing alternative courses of conduct, the actor may not be negligent if the actions taken are reasonable and prudent in the emergency context, provided the actor has not created the emergency"

(*Caristo v Sanzone*, 96 NY2d 172, 174 [2001] [internal citations and quotation marks omitted]). Video evidence can be relied upon to establish the emergency doctrine (see *Rodriguez v New York City Tr. Auth.,* Supra).

Here, the time-stamped footage not only contains footage from eight different bus cameras, but also provides data regarding the speed, direction, and geographic location of the bus. The footage begins at 11:05:00 AM and ends at 11:35:13 AM on April 28, 2022. The video footage establishes the following:

| 11:17:50 AM | The bus is travelling south-southwest in the right lane on Malcolm X Boulevard[3] between 121st and 120th Streets, at a speed of 18 mph. |
| --- | --- |
| 11:17:52 AM | From the camera which has a view of the rear entrance of the bus (Camera Analog 6), a vehicle is seen travelling alongside the bus in the left lane, going faster than the bus. Meanwhile, the bus is travelling at 20 mph. |
| 11:17:54 AM | From the same camera view (Camera Analog 6), the Car Defendants' vehicle can be seen travelling in the left lane alongside the bus two seconds later, going faster than the bus. Meanwhile, the bus is traveling at 20 mph. |
| 11:17:54 AM | From the forward camera view of the bus (Forward camera), the right front tire of the same vehicle that was traveling alongside the bus at 11:17:52 a.m. is now seen coming into the frame of view in the left lane. |

---

Nos. 30 and 31]). The name of the file of the video footage is also referenced in the Transit Defendants' affirmation in support of motion [NYSCEF Doc. No. 27] ¶ 8-9).

At oral argument on June 21, 2024 via MS Teams, the video footage was published and played for the parties' counsel. No party raised any objections with respect to this downloaded footage.

[3] Malcolm X Boulevard is also known as "Lenox Avenue".

**151633/2023   WASHINGTON, SHARE vs. NEW YORK CITY TRANSIT AUTHORITY ET AL**          **Page 4 of 9**
**Motion No.  001**

| 11:17:55 AM | From the forward camera view of the bus, the same vehicle that was traveling alongside the bus at 11:17:52 a.m. is now seen entirely within the frame and traveling in the left lane. The rear brake lights of the vehicle appear for less than a second. At this time, the bus is travelling in right lane at 23 mph. |
| --- | --- |
| 11:17:56 AM | From the forward camera view, the rear brake lights of the vehicle in the left lane vehicle are now off, the vehicle continues travelling forward in the left lane. Meanwhile, the bus is travelling in right lane at 23 mph. |
| 11:17:56 AM | From the forward camera view, the Car Defendants' vehicle veers into right lane directly in front of bus. At this moment, the bus is travelling in right lane at 23 mph. |
| 11:17:57 AM | From the forward camera view, the car Defendants' vehicle veers further into right lane. At this moment, the bus travelling in right lane at 23 mph, but increases to 24 mph. |
| 11:17:58 AM | From the forward camera view, the Car Defendants' vehicle collides with what appears to be an outdoor dining shed located in the parking lane and then veers to the left. At this moment, the bus is travelling in right lane at 24 mph. |
| 11:17:59 AM | From the forward camera view, the bus travelling in right lane appears to stop next to the dining shed. At this moment, the speed of the bus is 22 mph. The Car Defendants' vehicle slows. |
| 11:18:01 AM | From the forward camera view, the bus travelling in right lane comes to a complete stop. At this moment, the speed of the bus is 10 mph, then 4 mph. |
| 11:18:02 AM | From the forward camera view, Car Defendant's vehicle stops in right lane (Forward camera). Bus travelling in right lane at 4 mph then 0 mph. |

Based on the video footage, the Transit Defendants established their prima facie entitlement to summary judgment as a matter of law, based on the emergency doctrine. The bus is traveling in its own lane under the speed limit of 25 mph (34 RCNY § 4-06). The Car Defendants' vehicle veered into the path of the bus two seconds after it had passed the bus. Two seconds later, the bus stops because the Car Defendants' vehicle collided with the outdoor dining shed. Given that only two seconds passed between the time that the Car Defendants' vehicle cross into the lane of travel of the bus and the stopping of the bus, the Transit Defendants met their prima facie burden that the bus operator's actions in stopping to avoid striking the Car Defendants' vehicle was reasonable (*see Febres v Metropolitan Transp. Auth.*, 220 AD3d 462, 462 [1st Dept

**151633/2023   WASHINGTON, SHARE vs. NEW YORK CITY TRANSIT AUTHORITY ET AL**          **Page 5 of 9**
**Motion No.  001**

5 of 9

2023]; *Santana v Metropolitan Transp. Co.*, 170 AD3d 551 [2019]; *Orsos v Hudson Tr. Corp.,* 111 A.D.3d 561 [2013]).

In opposition, Isaiah Adams claims that "the co-defendant's vehicle, operated by Desire Tapia, was driving at an excessive rate of speed. At no time did the co-defendant sound her horn, try to move to the left, apply her brakes or slow down to avoid the collision" (Car Defendants' Exhibit A in opposition, Adams Affidavit ¶¶ 10-11 [NYSCEF Doc. No. 40]). The Car Defendants also argue that Isaiah Adams, the driver of the other vehicle, was faced with an emergency situation himself (affirmation of Car Defendants' counsel in opposition ¶¶ 12-17 [NYSCEF Doc. No. 39]). Finally, they argue that summary judgment is premature (*id.* ¶¶ 22-28).

Contrary to Car defendants' arguments, the motion for summary judgment by the Transit Defendants is not premature, because information as to why Isaiah Adams's vehicle made contact with the bus and crossed over into the lane of travel of the bus was within his own personal knowledge (*see Stephenson v New York City Tr. Auth.*, 226 AD3d 546 [1st Dept 2024]; *Ahmad v Behal*, 221 AD3d 558, 559 [1st Dept 2023]). The mere hope that additional discovery may lead to sufficient evidence to defeat a summary judgment motion is insufficient to deny such a motion" (*Singh v New York City Hous. Auth.*, 177 AD3d 475, 476 [1st Dept 2019]).

Car Defendants' arguments that an issue of fact arises as to whether the bus operator, Tapia, was partly at fault for not avoiding the accident are unpersuasive.

"'A driver has a duty not to merge into a lane of moving traffic until it is safe to do so,' and 'a driver of a vehicle with the right-of-way is entitled to anticipate that the driver in the lane next to him or her will obey the traffic laws requiring them to yield to a driver with the right-of-way'"

(*Salama v Piccirillo*, 223 AD3d 692, 693 [2d Dept 2024] [citation omitted]). "[T]he driver traveling with the right-of-way may be found to have contributed to the accident if they do not use reasonable care to avoid the accident" (*Caparitia v Johnson*, 216 AD3d 529, 529 [1st Dept 2023]). However, the driver with the right of way " is not comparatively at fault if they have only seconds to react to a vehicle that has failed to yield" (*id.*; accord *Salama*, 223 AD3d at 693). Here, defendant Tapia only had two second to react after Isaiah Adam's vehicle veered into Tapia's lane of travel, before Adams's vehicle stopped.

Isaiah Adams's uncorroborated assertion that the bus was speeding is insufficient to refute the bus video, which indicated that the speed of the bus was within the speed limit at all times (*see Min Zhong v Matranga*, 208 AD3d 439, 442 [1st Dept 2022], *affd* 39 NY3d 1053 [2023]["there is only one version of the accident: the one shown in the video"]; *Gaffney v New York City Tr. Auth.*, 210 AD3d 426, 426 [1st Dept 2022]; *Santana*, 170 AD3d at 552 [plaintiff's claim that a triable issue of fact arose as to whether the offending vehicle had tried to enter the bus's lane at least once before the accident was refuted by the surveillance video]).

**151633/2023 WASHINGTON, SHARE vs. NEW YORK CITY TRANSIT AUTHORITY ET AL**      **Page 6 of 9**
**Motion No. 001**

6 of 9

[* 6]

On the issue of whether Isaiah Adams was faced with an emergency, he avers as follows:

"5. I was driving at a rate of speed of approximately (15) to twenty (20) mph in the left lane behind an unknown vehicle. The unknown vehicle stopped suddenly and abruptly and without warning in front of my vehicle.

6. The unknown vehicle that slammed on his brakes was less than a few feet in front of me.

7 With practically no time to react to avoid hitting the unknown vehicle that stopped suddenly in front of me, I looked to my right and saw no vehicle next to me or approaching my vehicle and determined I can safely enter the right lane"

(Car Defendants' Exhibit A in opposition [NYSCEF Doc. No. 40]).

However, as the Transit Defendants point out, whether the emergency doctrine would apply to defendant Isaiah Adams would neither establish that Tapia had operated the bus negligently, nor raise a triable issue of fact as to Tapia's negligence. Assuming for the sake of argument, that Isaiah Adams were faced with an emergency situation, then it would follow that Tapia would therefore also have been faced with an emergency situation created by the actions of Isaiah Adams.

In any event, the Car Defendants failed to establish that the emergency doctrine applies to Isaiah Adams.

First, Isaiah Adams's claim that he was traveling at 15-20 mph was contradicted by the video footage. The video footage established that the bus was travelling between 23-24 mph, and the video footage shows that Adams's vehicle overtakes the bus at 11:17:54 a.m. It is reasonable to infer from the fact that Adams's vehicle overtakes the bus that Adams's vehicle is therefore traveling faster than the bus.

Second, the video footage contradicts Adams's statement that an unknown vehicle in front of his vehicle "slammed on his brakes," i.e., stopped suddenly and abruptly. The video footage reveals that the brake lights of the unknown vehicle appear for less than a second at 11:17:55 a.m., but that vehicle does not stop and continues to travel forward.

Lastly, "the emergency doctrine is typically not available to the rear driver in a rear-end collision, who is responsible for maintaining a safe distance" (*Vanderhall v MTA Bus Co.*, 160 AD3d 542, 542-43 [1st Dept 2018]), because the driver's own conduct in failing to maintain a safe distance "caused or contributed to the emergency situation" (*id.*). As the Transit Defendants point out, Isaiah Adams stated in his affidavit the unknown vehicle in front of him allegedly braked "less than a few feet in front of me"

**151633/2023   WASHINGTON, SHARE vs. NEW YORK CITY TRANSIT AUTHORITY ET AL**          **Page 7 of 9**
**Motion No.  001**

7 of 9

(Isaiah Adams aff ¶ 6). This rationale is therefore similarly applicable in this case, where the driver who followed too closely chose to swerve into the path of another vehicle instead of rear-ending the vehicle that allegedly suddenly stopped or slowed.

In sum, the Car Defendants have failed to raise a triable issue of fact as to the applicability of the emergency doctrine as to defendant Tapia's operation of the bus. Therefore, the Transit Defendants' motion for summary judgment dismissing the complaint as against them is granted.

Because the Transit Defendants can no longer be held liable to plaintiff, the cross claims of the Car Defendants against the Transit Defendants are also dismissed (*see e.g. Bendel v Ramsey Winch Co.*, 145 AD3d 500, 501 [1st Dept 2016] [in view of the dismissal of the complaint in its entirety as against a defendant, the cross claims against that defendant are also dismissed]; *see Phillips v Trommel Constr.*, 101 AD3d 1097, 1098 [2d Dept 2012] [cross claims which were predicated on complaint must be dismissed when complaint was dismissed]). Similarly, the cross claims of the Transit Defendants against the Car Defendants are similarly dismissed as academic (*Rogers v Rockefeller Group Intl.., Inc.*, 38 AD3d 747, 750 [2d Dept 2007]).

## CONCLUSION

Upon the foregoing documents, it is hereby **ORDERED** that plaintiff's motion for summary judgment as to liability in plaintiff's favor against all defendants (Motion Seq. No. 001) is **DENIED**; and it is further

**ORDERED** that the defendants MTA Bus Company, Manhattan and Bronx Surface Transit Operating Authority, Metropolitan Transportation Authority, New York City Transit Authority and Desiree Tapia's cross motion for summary judgment dismissing plaintiff's complaint and any cross-claims against them is **GRANTED**, and the complaint is severed and dismissed as against defendants MTA Bus Company, Manhattan and Bronx Surface Transit Operating Authority, Metropolitan Transportation Authority, New York City Transit Authority and Desiree Tapia, and all cross claims by and against defendants MTA Bus Company, Manhattan and Bronx Surface Transit Operating Authority, Metropolitan Transportation Authority, New York City Transit Authority and Desiree Tapia are dismissed; and it is further

**ORDERED** that the Clerk is directed to enter judgment in favor of defendants MTA Bus Company, Manhattan and Bronx Surface Transit Operating Authority, Metropolitan Transportation Authority, New York City Transit Authority and Desiree Tapia accordingly; and it is further

**ORDERED** that the remainder of this action shall continue; and it is further

**ORDERED** that this action is respectfully referred to the General Clerk for reassignment out of the Transit Part to the Motor Vehicle Part; and it is further

**ORDERED** that counsel for defendants MTA Bus Company, Manhattan and Bronx Surface Transit Operating Authority, Metropolitan Transportation Authority, New York City Transit Authority and Desiree Tapia is directed to serve the Clerk of the General Clerk's office; and it is further

**ORDERED** that service of this order upon the Clerk of the General Clerk's Office shall be made in accordance with the procedures set forth in Section J of the *Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases* (accessible at the "E-Filing" page on the court's website at https://www.nycourts.gov/LegacyPDFS/courts/1jd/supctmanh/Efil-protocol.pdf).

Any future conferences in Part 21 are canceled.

20240703163344RTSAI435B0163489B45DFB774E0F4E1A31989

_____
**7/3/2024**
**DATE**

_____
**RICHARD TSAI, J.S.C.**

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|---|
| | X | GRANTED | | DENIED | | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | X | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**151633/2023   WASHINGTON, SHARE vs. NEW YORK CITY TRANSIT AUTHORITY ET AL**                Page 9 of 9
**Motion No.  001**

9 of 9